## WILLIAMS *v.* SECRETARY OF STATE.

1. STATE SENATE—SENATORIAL DISTRICTS—APPORTIONMENT—CONSTITUTIONAL PROVISIONS—COUNTY AS UNIT.

The provision of section 2, article 4, of the Constitution, that "no county shall be divided in the formation of senate districts, except such county shall be equitably entitled to two or more senators," indicates, not that the county is made the basis of apportionment, but that portions of different counties must not be included in the same district, and that when a county is entitled to two or more senators the obligation is upon the legislature to make such apportionment within the county according to population upon the basis of the last enumeration of the State.

2. SAME — DUTY OF APPORTIONMENT—WHERE VESTED—SUPREME COURT—JURISDICTION.

The duty of dividing the State and the counties thereof into senatorial districts is reposed by the Constitution in the legislature and the court only assumes to determine whether in a given case the legislature has exercised a constitutional discretion.

3. SAME—VALIDITY OF APPORTIONMENT—INEQUALITY.

   A senatorial apportionment act, according to which certain districts have more than double the population of others, cannot be sustained.

4. SAME—APPORTIONMENT ACT—DURATION.

   Each apportionment act remains in force until it is supplanted by a subsequent valid act. OSTRANDER, J., dissenting.

5. SAME—INVALIDITY OF SUBSEQUENT ACT—EFFECT.

   Where the last senatorial apportionment act is invalid because of disparity in the population of the districts, and the same objection exists as to previous acts, the election must be called according to the last act which was valid when enacted, notwithstanding changes in the population have produced equal if not greater inequalities than those in the acts held invalid. OSTRANDER, J., dissenting.

Mandamus by Stephen D. Williams to compel George A. Prescott, secretary of State, to give the notices of election of State senators under the provisions of Act No. 264, Pub. Acts 1895. Submitted June 11, 1906. (Calendar No. 21,777.) Writ granted July 24, 1906.

*Jeffries & Williams* (*Edward Cahill*, of counsel), for relator.

*John E. Bird*, Attorney General (*Charles W. McGill*, of counsel), for respondent.

McALVAY, J. Relator, a resident and elector in Wayne county, applies for a writ of mandamus against respondent, secretary of State, to compel him to give notice of the election of senators required by section 3606, 1 Comp. Laws, under Act No. 264, Pub. Acts 1895, claiming that Act No. 245 of the Public Acts of 1905, entitled "An act to divide the State of Michigan into thirty-two senatorial districts," being the act under which respondent proposes to give said notices, and also Act No. 189 of the Public Acts of 1901, are unconstitutional and void; that the limitation upon the power delegated by the Constitution of the State to the legislature has been disregarded in the apportionment made by the acts in question.

All of the questions involved in this application were before this court and passed upon in the case of *Giddings* v. *Secretary of State*, 93 Mich. 1 (16 L. R. A. 402). Questions of jurisdiction and the right of the private citizen to apply in his own name for the relief prayed are admitted as settled by that case. The only question upon which an issue is made by the attorney general is whether the apportionment of 1905 is equitable; it being insisted that the intention of the framers of the Constitution was to make the county primarily the basis for representation in the State senate, and that the apportionment of Wayne county of which relator complains is not inequitable, but gives that county a substantial advantage.

The constitutional provisions relative to senatorial apportionments are familiar. The State is divided into 32 senatorial districts, each of which shall choose one senator. No county shall be divided, except it shall be equitably entitled to two or more senators. An enumeration of the inhabitants of the State for the year 1854 and every tenth year thereafter is required, and at the first session after each State enumeration, and the first session after each enumeration by the authority of the United States, the legislature must rearrange the senatorial districts according to the number of inhabitants. The provision (art. 4, § 2) that "no county shall be divided in the formation of senate districts, except such county shall be equitably entitled to two or more senators," indicates, not that the county is made the basis of apportionment, but that portions of different counties must not be included in the same district, and that when a county is entitled to two or more senators the obligation is upon the legislature to make such apportionment within the county according to population upon the basis of the last enumeration of the State. The figures given in support of this argument for respondent show that the division of Wayne county into 5 districts would make each district larger than each of 14 other districts as apportioned. This court cannot deter-

mine the apportionment, or direct the number of districts into which a county may be divided. That duty is reposed by the Constitution in the legislature. This court assumes to determine whether in this case the legislature has exercised a constitutional discretion.

In his petition relator has tabulated by districts the apportionment made under the act of 1905, and in a comparison of the population in the different districts as constituted by said act challenges the attention of the court to the fact that in making such apportionment the legislature has wholly ignored the provisions of the Constitution.

The State enumeration of 1904 shows a total population of 2,530,016, giving 79,063 as a unit or basis to be considered in arriving at a constitutional apportionment of senate districts. To determine whether "an honest and fair discretion was exercised by the legislature in apportioning the districts so as to preserve as nearly as may be an equality of representation," it is only necessary to make a comparison of the population in different districts: First, 116,033; fifteenth, 52,731; fourth, 108,434; eleventh, 55,637; ninth, 102,725; nineteenth, 55,744. In the *Giddings Case*, supra, the disparity between districts was no greater than in the instances illustrated. In that case the court said:

"The unconstitutionality of the act is clear. * * * The State cannot be divided into senatorial districts with mathematical exactness, nor does the Constitution require it. It requires the exercise on the part of the legislature of an honest and fair discretion in apportioning the districts so as to preserve as nearly as may be the equality of representation. This constitutional discretion was not exercised. * * * The facts themselves demonstrate this beyond controversy, and no language can make the demonstration plainer."

The *Giddings Case* controls this case. The statute in question must be held invalid.

This act was a re-enactment of the senatorial apportionment law of 1901, and as the validity of this act is also questioned an examination of the apportionment for that

year has been necessary. We find that the objections made to the act of 1901 are sustained by the facts, and that such gross inequalities exist that the same may be said of it as has been said of the act of 1905.

Petitioner prays that respondent may be required to give election notices under the law of 1895. The validity of this law is therefore directly involved. After the *Giddings Case* was decided the legislature convened in special session and enacted the law of 1892. (Act No 1, Pub. Acts 1892). Its validity has never been questioned. In 1895 this law was re-enacted. As was said in *Giddings v. Secretary of State*, supra:

"Each apportionment act remains in force until it is supplanted by a subsequent valid act."

And as we hold the acts of 1901 and 1905, respectively, invalid, the law of 1895 is the act under which the notice must be given, unless the legislature, duly convened by the executive, enacts another valid act apportioning the senatorial districts of the State. While this court realizes the fact that, with the present population, equal, if not greater, inequalities may exist under the statute of 1895, yet, as this is the only valid act extant under which the court can direct respondent to act, the situation cannot be remedied by judicial action, and to deny to relator and the people of the State the relief to which they are so clearly entitled would create a situation the ultimate result of which might be most disastrous.

This court has no right or inclination to assume the powers of a co-ordinate branch of the State government. It is called upon in this case to determine the constitutionality of an act of the legislature. Its right to do so cannot be questioned, and it cannot refuse to exercise it.

The contention that a constitutional statute of apportionment in the absence of a succeeding one constitutionally enacted is by limitation constitutionally dead, cannot be successfully defended. We all agree that the statute under consideration is unconstitutional; then, if the above

contention is correct, the logical result would be that the writ should issue to the secretary of State, commanding him not to issue the notices of election under this statute, and advising him that there is no valid law in existence under which such notices may be given. According to this construction the inaction of the legislature puts an end to the government established by the Constitution. This demonstrates its unsoundness. It is impossible to believe that the people who adopted the Constitution intended—and their intent determines its construction—any such result. They intended to establish a government that would continue until they chose to change it. They did not intend that the action or inaction of any of their officers—who in a legal sense are their servants—should destroy such government.

The proposition as laid down in the *Giddings Case,* supra, and which we most heartily indorse, that each valid apportionment, remains in force until it is supplanted by a subsequent valid act, is the law of this State. It is conservative, and preservative of existing government.

Such construction invited no clash between co-ordinate branches of the State government. It left the executive and the legislature free to exercise their constitutional authority if they saw fit, and, if they took no action, it preserved the machinery by which the legislature could be perpetuated.

A writ of mandamus will be issued commanding and requiring respondent, as secretary of State, in giving the notices relative to the election of senators required by section 3606, 1 Comp. Laws, to comply with the provisions of the senatorial apportionment act of 1895, unless the executive of the State, before the time expires for giving such notices, shall convene the legislature in special session to make a new senatorial apportionment. No costs are allowed.

CARPENTER, C. J., and GRANT, BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred with McALVAY, J.

OSTRANDER, J. (*dissenting*).    It is matter of some difficulty, which a trial will demonstrate, to equitably divide the territory of the State into senatorial districts according to a unit of representation obtained by dividing the population by the number of senators.    It is possible to arrange the districts so that the inequality will be very much less than it will be under the act the constitutionality of which is challenged.    I agree with Mr. Justice McALVAY that the act in question should be held to be void, and agree that the power and duty of this court in the premises was to that extent correctly asserted in the case of *Giddings* v. *Secretary of State*, 93 Mich. 1 (16 L. R. A. 402).    I do not agree to the proposition that, having determined the act to be void, the court should proceed further and direct the respondent to issue election notices under another apportionment act, the life of which long ago expired, under which the electors will be worse represented than they will be if the present act is followed.    In so far as the case referred to supports such action by the court, it should not, in my opinion, be followed.    I am not satisfied with the argument that the act of 1895 provided for an equitable apportionment, was therefore, when passed, constitutional, and, being at the time of its passage constitutional, remains so until superseded by another constitutional apportionment. The argument would be good if applied to legislation which continued until superseded.    Senatorial apportionment acts do not continue.    It is of the essence of the constitutional theory of representation that they shall not continue. Enumerations of inhabitants are periodical and regular. The Constitution requires a rearrangement of senate districts at the first session of the legislature after each stated enumeration of inhabitants.    To be constitutional, the acts of the legislature must be periodically successive, and also, in each of them, the arrangement of senate districts must be an equitable one.    The act in question is unconstitutional, because it has not provided for an equitable rearrangement of senate districts.    For the same reason, the act of 1895,

if now enacted by the legislature, would be unconstitutional. The act of 1895 is also constitutionally dead. It requires the exercise of legislative, and not of judicial, power to revive it. The argument and conclusion of the majority of the justices would lead to this: That if, 40 years ago, an apportionment act had been passed which, according to the then last census equitably arranged senatorial districts, and no valid act had since been passed, it would be the constitutional duty of the present secretary of State to issue his election notices according to that act; or, if no apportionment had been made at all for 40 years, the last act would remain the constitutional act. I know of no reason which supports the declaration of the court in the case at bar, which would not also support the declaration that the early act in the supposed case was now unconstitutional, or, in the present case, that the act of 1895 is now unconstitutional. It is said that if this court holds the act of 1905 to be void, and does not point out some other act in accordance with which the respondent shall issue election notices, chaos will result. Chaos is effectually provided against in our Constitution, and best when neither department of government assumes any of the powers of another. There are other departments of government, the duties of which will be presumably performed. There is at present no arrangement of senate districts which conforms with constitutional requirements. The duty to make such arrangement lies with the legislature, and with no other department of government. The occasion is an extraordinary one. Constitutional relief is easy and speedy. A writ should issue, commanding the respondent not to issue election notices according to the senatorial apportionment act of 1905, and advising him that there is no apportionment act according to which such notices may be lawfully issued.