[No. 13625. *En Banc.* August 16, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Robert L. Warson, Appellant,* v. I. M. HOWELL, *Secretary of State, Respondent.*[1]

STATES—LEGISLATIVE DISTRICTS—APPORTIONMENTS—CONSTITUTION-ALITY—POWER OF COURTS. The failure of the legislature to make legislative reapportionments according to the number of inhabitants, and to make them anew every ten years, as required by Const., art. 2, § 3, is not ground for holding a legislative apportionment unconstitutional, although gross inequalities now exist; since the courts cannot compel the legislature to perform the duty of redistricting the state, and an apportionment lawfully enacted continues in force until superseded by a valid act.

SAME — LEGISLATIVE DISTRICTS — PRESUMPTIONS — VALIDITY — IN-EQUALITIES. The presumption of constitutionality attaches to legislative apportionment acts, and facts adduced to show unconstitutionality must be clear and cogent and establish beyond question that the law went entirely beyond limits; it is not sufficient that there are inequalities in the districts, where there were no deficiencies equal to a unit or sufficient to show an intent to ignore the constitution.

STATUTES — VALIDITY — LEGISLATIVE APPORTIONMENTS — TIME TO QUESTION. A legislative reapportionment act will not be declared

[1] Reported in 159 Pac. 777.

unconstitutional after it has stood uncontradicted for fifteen years and seven legislatures have been elected under it, since a seasonable attack must be made upon legislation that is to a great extent political and administrative in its nature, involving no individual rights.

Application filed in the supreme court August 4, 1916, for a writ of mandamus to compel the secretary of state to accept relator's filing as a candidate for state senator. Denied.

*Palmer & Askren,* for relator.

*The Attorney General* and *Glenn Fairbrook,* for respondent.

FULLERTON, J.—This is an application for a writ of mandamus, made by the relator, Warson, against I. M. Howell, secretary of state, to compel that officer to accept the relator's filing as a candidate for the office of state senator for the counties of Kitsap and Mason on the republican primary ticket. The relator's application is based on § 1 of art. 22 of the constitution, which apportioned the state into senatorial and representative districts and prescribed the number of senators and representatives that should be elected as the first legislative body following the adoption of the constitution. In this apportionment, the counties of Kitsap and Mason constituted the Twentieth senatorial district, which was entitled to one senator. The secretary of state refused the proffered filing, on the ground that the legislature has twice since the adoption of the constitution reapportioned the state, the last apportionment being at the session of 1901, in which the state was divided into forty-two single senatorial districts, the counties of Mason, Kitsap and Island being made the Twenty-third district, entitled to one senator. This act, the secretary contends, supersedes the apportionment made by the section of the constitution cited. The constitution provides for a reapportionment of the several legislative districts by the legislature at stated

intervals, and if the apportionments made by that body are not violative of the restrictions placed upon the legislative powers by the constitution, the relator's application was properly denied.

It is the contention of the relator that the apportionments made by the legislature are violative of the constitutional restriction and hence are void, and that the only lawful apportionment under which members of the legislature can be legally elected is the one contained in the constitution. This constitutes the sole question for our determination.

The sections of the constitution which relate to apportionments are the following:

"The house of representatives shall be composed of not less than sixty-three nor more than ninety-nine members. The number of senators shall not be more than one-half nor less than one-third of the number of members of the house of representatives. The first legislature shall be composed of seventy members of the house of representatives and thirty-five senators." Const., art. 2, § 2.

"The legislature shall provide by law for an enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five, and every ten years thereafter; and at the first session after such enumeration, and also after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, excluding Indians not taxed, soldiers, sailors, and officers of the United States army and navy in active service." Const., art. 2, § 3.

"After the first election the senators shall be elected by single districts of convenient and contiguous territory at the same time and in the same manner as members of the house of representatives are required to be elected, and no representative district shall be divided in the formation of a senatorial district. They shall be elected for the term of four years, one-half of their number retiring every two years. The senatorial districts shall be numbered consecutively, and the senators chosen at the first election had by virtue of this constitution, in odd-numbered districts, shall go out of office at the end of the first year, and the senators elected in

the even-numbered districts shall go out of office at the end of the third year." Const., art. 2, § 6.

These sections of the constitution, it will be observed, impose upon the legislature, when apportioning and redistricting anew the members of the senate and house of representatives, certain restrictions: (1) Neither the senate nor house of representatives may contain more or less than certain specified numbers; (2) senatorial districts must be single and be of convenient and contiguous territory; (3) no representative district shall be divided in the formation of a senatorial district; (4) the apportionment must be made according to the number of inhabitants. There is no contention that the first three of these requirements were violated in either of the apportionment acts made by the legislature. The sole contention is that the apportionments were not made according to the number of inhabitants. Tables are presented showing the number of inhabitants in each several district above and below the unit of representation adopted, both at the time the apportionments were made and as shown at the time of the taking of the Federal census of 1910. Each of these tables shows inequalities—the comparisons based on the census of 1910 showing such inequalities to be exceedingly gross. It may be remarked here, however, that this latter fact furnishes no ground for declaring the legislative apportionment unconstitutional. While it argues strongly against the failure of the legislature to perform its duty, it states no ground for setting aside a legislative apportionment valid when enacted. It is held by all of the courts that the legislature cannot be compelled to redistrict the state as directed by the constitution, and as a corollary thereto, it must follow that an apportionment act lawfully enacted will continue in force until superseded by a subsequent valid act.

The question, then, turns on the constitutionality of the apportionment acts. The act of 1901 (Laws of 1901, p. 79, ch. 60), being the last upon the subject by the legislature, repeals the act of 1890, supersedes the constitutional

apportionment, and is the law now in force under which the ensuing legislature must be elected unless it has never been constitutionally valid.

It cannot be disputed that the presumption of constitutionality attaches to apportionment acts in the same manner that it does to any other act of the legislature, and that any doubt as to the power of the legislature to pass the particular act must result in a finding that the act is within the legislative power. It is axiomatic also that the constitution is a limitation of power, not a grant of power, and that, save for constitutional restrictions, the legislature could apportion the state in any manner it deemed fit and the courts would be powerless to inquire into the validity of the act. It follows, therefore, that the facts adduced to show the alleged unconstitutionality of the act in question must be clear and convincing, and must establish beyond question that the legislature in enacting the law went entirely beyond the limits marked by the constitution. It is clear, furthermore, in providing that the apportionment should be made according to the number of inhabitants, the framers of the constitution did not intend that this should be done with mathematical exactness. Indeed, it requires no demonstration to show that, because of the other restrictions imposed, this is wholly impossible. Something, therefore, was left to the discretion of the legislature. If in complying with the other mandates of the constitution it finds that it is compelled to ignore equality in population to some extent, its enactment will nevertheless be valid because of the necessity of the case. Before it will be invalid, its action must partake of an arbitrary disregard of the requirements of the constitution, or be so gross and inconsistent as to imply arbitrary action.

Turning, then, to the apportionment act of 1901, we find no reason to hold it unconstitutional on the ground of inequality of representation. There are inequalities it is true, but none that indicates arbitrary action on the part of the legislature. Several districts accorded only one representa-

tive contain more than the unit of population necessary for one representative, but none of them approaches the population which would entitle it to two representatives. The same can be said of districts whose population was less than the number of units required to entitle them to the number of representatives granted them. In no instance was the deficiency equal to a unit, and in most of them the differences were comparatively insignificant. In the few instances where the surplus or deficiency is considerable, it is evident that some special reason induced the making of the differences; not an intent on the part of the legislature to ignore the constitutional requirements. On the merits of the controversy, therefore, we are unable to conclude that the writ should be granted.

But even if it were concluded that the act of 1901 was such a departure from the requirements of the constitution as to disclose a wilful disregard of its provisions, we think it now too late for the relator to raise the question. The act complained of has stood unquestioned for more than fifteen years. Seven legislatures have been elected under it. Laws have been passed which so far affect the rights of the electors that a return to the old districts marked out by the constitution would result in the utmost confusion, if not chaos, requiring perhaps a session of the legislature before an election could be held. No court is required, on a complaint made after this lapse of years, to subject the people of the state to the turmoil such a course would cause. This form of legislation is to a great extent political and administrative in its nature, and involves no individual rights other than such as pertain to the electorate as a whole. Persons who conceive that the legislature has acted in disregard of the mandates of the constitution must, therefore, act promptly else they will be held to have waived their right to act at all.

"The argument that, if an act is invalid when passed, the vice continued to live in it as long as it remains on the statutes, and therefore may be annulled at any time, is not

18—92 WASH.

sound when attempted to be applied to legislation that is political or administrative in its nature. It may be true the laches cannot give validity to a void act, but when no property right is involved, and the question is purely political and administrative, individuals or parties that have seen the act in operation for years, and the affairs of state carried on under it, without offering objection or making protest, will not be heard at a late day to question its validity. They must act in seasonable time and not delay until the conditions they have acquiesced in and assented to have become firmly established as a part of the system of government."

The writ is denied.

MORRIS, C. J., PARKER, MOUNT, MAIN, and ELLIS, JJ., concur.

CHADWICK, HOLCOMB, and BAUSMAN, JJ., took no part.