## JAY W. SMITH v. MIKE HOLM.[1]

September 21, 1945.

No. 34,146.

[1]Reported in 19 N. W. (2d) 914.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for appellant.

*William Howard Anderson, Joseph F. Cowern, Alfred W. Bowen, Ray F. Merriam,* and *Paul J. Thompson,* for respondent.

LORING, CHIEF JUSTICE.

To a complaint seeking relief in the form of a declaratory judgment to the effect that the legislative redistricting act of 1913 (L. 1913, c. 91) had become unconstitutional by reason of unequal representation resulting from growth of population in various districts, the defendant demurred on the ground, among others, that it did not state a cause of action. From an order overruling the demurrer, accompanied by a certificate that the questions involved were important and doubtful, the defendant has appealed.

On the merits, the sole question presented is whether such changes in equality of representation have operated to vitiate the constitutionality of the act and leave the state without a valid law creating legislative districts. The state constitution provides (art. 4, § 23):

488

"The legislature shall provide by law for an enumeration of the inhabitants of this State in the year one thousand eight hundred and sixty-five, and every tenth year thereafter. At their first session after each enumeration so made, and also at their first session after each enumeration made by the authority of the United States, the legislature shall have the power to prescribe the bounds of congressional, senatorial and representative districts, and to apportion anew the senators and representatives among the several districts according to the provisions of section second of this article."

And (art. 4, § 2) :

"The number of members who compose the Senate and House of Representatives shall be prescribed by law, but the representation in the Senate shall never exceed one member for every 5,000 inhabitants, and in the House of Representatives one member for every 2,000 inhabitants. The representation in both houses shall be apportioned equally throughout the different sections of the State, in proportion to the population thereof, exclusive of Indians not taxable under the provisions of law."

■ L. 1913, c. 91, soon after its passage was challenged as to its conformance with the quoted sections and was held to be constitutional against the very charges of inequality now made against it. State ex rel. Meighen v. Weatherill, 125 Minn. 336, 147 N. W. 105. In that case this court, in announcing the rule under which it would test the validity of the act here under consideration, quoted with approval the rule stated in State ex rel. Atty. Gen. v. Cunningham, 81 Wis. 440, 484, 51 N. W. 724, 730, 15 L. R. A. 561, as follows:

"* * * *perfect exactness* in the apportionment according to the number of inhabitants is neither required nor possible. But there should be as close an approximation to *exactness* as possible, and this is the utmost limit for the exercise of legislative discretion. If, * * * there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion, and that evinces an intention on the

part of the legislature to utterly ignore and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever."

In short, if the legislature exercises its judgment and discretion in enacting an apportionment law, the result is not vulnerable to attack in the courts.

■ Does the subsequent change in relative representation annul its provisions adjudged valid when enacted?

Counsel for plaintiff and the trial court seem to have assumed that the question must be answered in the affirmative. No case has been cited to us, nor have we found any, supporting the contention that it should be so answered, although a similar situation has developed in many states. The plaintiff in his brief does no more than state an assumption. In support of its position, the trial court has cited some cases in which laws activating the police power have been held to have become unconstitutional as discriminatory or confiscatory when sought to be applied to circumstances radically changed since their enactment. The act here involved is not an exercise of the police power, but of a political, administrative power involving the exercise of judgment and discretion, and is a governmental function in the sense that it is commanded by the constitution in furtherance of the structure of the state government. State ex rel. Meighen v. Weatherill, *supra;* State ex rel. Warson v. Howell, 92 Wash. 540, 159 P. 777. This clearly distinguishes it from the police power cases.

The division of powers is the fundamental principle upon which American constitutional government is based, and the success of our form of government depends, in large measure, upon the respect paid to that principle by each of the three divisions in its relations with the others. Under art. 3 of our state constitution, the initiative in legislation lies entirely in the legislature, and by art. 4 the redistricting power is placed wholly in that body. Fergus v. Marks, 321 Ill. 510, 514, 152 N. E. 557, 559, 46 A. L. R. 960, 962. In that case the court said:

"Neither one of these departments [of government] can arrogate to itself any control over either one of the other departments in matters which have been solely confided by the constitution to such other department."

In State ex rel. Holm v. District Court, 156 Minn. 270, 272, 194 N. W. 630, 631, this court, in commenting on the division of governmental powers into three independent branches, quoted with approval its previous language in Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A.(N.S.) 415, as follows:

"Neither is responsible to the other for the manner in which it exercises its discretion in the performance of duties which are governmental or political in their character."

In State ex rel. Burnquist v. District Court, 141 Minn. 1, 16, 168 N. W. 634, 636, 3 A. L. R. 1476, this court, speaking through Mr. Justice Holt, in discussing the division of powers, said:

"* * * the judicial has not the power to control, coerce or restrain the action of the other two within the sphere allotted them by the Constitution wherein to exercise judgment and discretion,"

and he speaks of such action as "unthinkable." The judicial branch may not, therefore, directly or indirectly interfere with this legislative power in any other way than by passing upon the constitutionality, as of the time of their enactment, of such laws as the one before us for failure to comply with the rule hereinbefore stated. The responsibility to heed the constitutional mandate to redistrict is laid upon the legislature, and it is, at most, only when as of the time of enactment there appears a clear and palpable violation of the fundamental law that the courts would have the power to upset the law. State ex rel. Meighen v. Weatherill, *supra*.

Absent a violation of the announced rule in the enactment, the mere change in relative population and consequent inequality of representation subsequent to enactment does not render the act void. The plaintiff concedes that the courts have no power to compel the legislature to act. It follows from that lack of power that an ap-

portionment act, constitutionally enacted, remains in force until superseded by a valid act. The division of powers leaves the legislature free from compulsion. Its judgment and discretion are its own to exercise or not, as its conscience permits. In State ex rel. Warson v. Howell, 92 Wash. 540, 542, 159 P. 777, 778, a situation almost identical with that now prevailing in Minnesota was before that court in 1916. The last apportionment in that state had been enacted in 1901, and the constitutional requirement that after each state and federal census the legislature "shall apportion and district anew the members" of the legislature had been entirely ignored, notwithstanding changes which rendered the inequalities in population "exceedingly gross." The court said (92 Wash. 543, 159 P. 778):

"* * * It may be remarked here, however, that this latter fact furnishes no ground for declaring the legislative apportionment unconstitutional. While it argues strongly against the failure of the legislature to perform its duty, *it states no ground for setting aside a legislative apportionment valid when enacted.* It is held by all of the courts that the legislature cannot be compelled to redistrict the state as directed by the constitution, and as a corollary thereto, it must follow that *an apportionment act lawfully enacted will continue in force until superseded by a subsequent valid act.*" (Italics supplied.)

This seems sound doctrine to us. It is our opinion that a reapportionment act, valid when enacted, may not be held unconstitutional by reason of subsequent changes in the relative population of the districts, and that it continues in force until superseded by a valid act. State ex rel. Warson v. Howell, *supra;* Williams v. Secretary of State, 145 Mich. 447, 451, 108 N. W. 749, 750. In the latter case, the Michigan court reiterated the language it had used in Giddings v. Secretary of State, 93 Mich. 1, 9, 52 N. W. 944, 947, 16 L. R. A. 402, 405, that "each apportionment act remains in force until it is supplanted by a subsequent valid act." In the Williams case, this was said in a situation where two subsequent acts, those of

1905 and of 1901, were held invalid and that of 1895 was held to be in force. The cases cited by the trial court involving the police power are not in point. The remedy lies in the political conscience of the legislature, where lies the burden of the constitutional mandate. It is not within the province of this court to prompt the action of that conscience. It is usually sensitive enough to promptings from the electorate.

Plaintiff has filed a supplemental brief discussing the Washington and Michigan cases, both of which were cited and discussed at considerable length in the defendant's original brief. Plaintiff contends that the holding in the Washington case which we follow is *obiter dictum*.

There were at least two questions involved in that case, one of which is not before us—the constitutionality of the law under consideration when it was enacted. It was in connection with that question that the language quoted in the supplemental brief was used. The statement on page 542 of 92 Wash., 159 P. at p. 778, as to the "sole question for our determination" is broad enough to cover the subsequent discussion of the question before us. Regardless of whether it was, the holding as to subsequent inequalities was not *obiter dictum*. The court said (92 Wash. at p. 543, 159 P. at p. 778):

"* * * Tables are presented showing the number of inhabitants in each several district above and below the unit of representation adopted, both at the time the apportionments were made and as shown at the time of the taking of the Federal census of 1910. Each of these tables shows inequalities—the comparisons based on the census of 1910 showing such inequalities to be exceedingly gross. It may be remarked here, however, that this latter fact furnishes no ground for declaring the legislative apportionment unconstitutional. While it argues strongly against the failure of the legislature to perform its duty, it states no ground for setting aside a legislative apportionment valid when enacted."

The holding of the Michigan case is equally plain.

The disposition which we make of the merits renders it unnecessary to pass upon the procedural questions presented, but, lest this opinion should be interpreted as a holding that the question presented was properly one for consideration under the declaratory judgments act, it must be said that that question is not decided, and the opinion should not be interpreted as so holding.

The order overruling the demurrer is reversed.