86 So.2d 799 (1956)
A. Max BREWER and O.L. Burton, Individually and as State Representatives from Brevard County, Appellants,
v.
R.A. GRAY, as Secretary of State, Richard W. Ervin, as Attorney General, Charles D. Stewart, Bernie C. Papy, W.H. Carmine, Jr., and Walter O. Shepard, as State Representatives, Appellees.
Supreme Court of Florida. En Banc.
April 11, 1956.
*801 Butt & Akridge, Cocoa, and Crofton, Wilson & Brewer, Titusville, for appellants.
Richard W. Ervin, Atty. Gen., and Howard S. Bailey, Asst. Atty. Gen., for appellees.
THORNAL, Justice.
Appellants Brewer and Burton who were plaintiffs below appeal from a decree of the Chancellor sustaining the constitutionality of Chapter 31378, Laws of Florida, Extraordinary Session 1955, which reapportioned membership of the House of Representatives of the Florida Legislature.
The question before us on appeal and which was ruled on by the Chancellor below is whether Chapter 31378, supra, which reapportioned the membership of the House of Representatives of the State Legislature is unconstitutional or at least inoperative until the Legislature reapportions the State Senate in accordance with the requirements of Section 3, Article VII, of the Florida Constitution, F.S.A. No Act has yet been passed by the 1955 Legislature reapportioning the State Senate.
By Chapter 31378, supra, the ninety-five members of the House of Representatives were apportioned among the several counties in accordance with the mathematical formula governing the House as set forth in Section 3, Article VII, Florida Constitution. The ultimate effect of the Act so far as these parties are concerned was to reduce representation in the House from two members each to one member each for Brevard and Lee Counties and simultaneously to increase representation in the House from one member each to two members each for Monroe and Okaloosa Counties. The apportionment was stated to be based on the 1950 Federal Census. Appellants Brewer and Burton presently represent Brevard County in the House of Representatives. Appellees Carmine and Shepard represent Lee County. Appellee Stewart represents Okaloosa County and appellee Papy represents Monroe.
In holding the Act under attack to be constitutional and operative in accordance with its provisions, the Chancellor stated:
"The existence of two duties (a) to reapportion the Senate and (b) to reapportion the House of Representatives, does not make the performance of one duty ineffectual until the other *802 has been accomplished unless it is clear from the Constitution that this was the intent of the people. I cannot find that intent clear in the Constitution."
We hold that he ruled correctly and his decree must, therefore, be affirmed.
It is appropriate to consider certain basic principles that guide us to our conclusion. We have separated Article VII, Section 3, of the Florida Constitution into its four component sentences for convenience of analysis, and quote the same as follows:
"The Legislature that shall meet in regular session A.D. 1925, and those that shall meet every ten years thereafter, shall apportion the Representation in the Senate, and shall provide for thirty-eight (38) Senatorial Districts, such Districts to be as nearly equal in population as practicable, but no county shall be divided in making such apportionment, and each District shall have one Senator; and, at the same time, the Legislature shall also apportion the Representation in the House of Representatives, and shall allow three (3) Representatives to each of the five most populous counties, and two (2) Representatives to each of the next eighteen more populous counties, and one Representative to each of the remaining counties of the State at the time of such apportionment.
"Should the Legislature fail to apportion the Representation in the Senate and in the House of Representatives, at any regular session of the Legislature at any of the times herein designated, it shall be the duty of the Legislature or Legislature succeeding such regular session of the Legislature, either in special or regular session, to apportion the Representation in the Senate and in the House of Representatives as herein provided. The preceding regular Federal or regular State Census, which ever shall have been taken nearest any apportionment of Representatives in the Senate and in the House of Representatives, shall control in making any such apportionment. In the event the Legislature shall fail to reapportion the representation in the Legislature as required by this amendment, the Governor shall (within thirty days after the adjournment of the regular session), call the Legislature together in extraordinary session to consider the question of reapportionment and such extraordinary session of the Legislature is hereby mandatorily required to reapportion the representation as required by this amendment before its adjournment (and such extraordinary session so called for reapportionment shall not be limited to expire at the end of twenty days or at all, until reapportionment is effected, and shall consider no business other than such reapportionment.)" (Emphasis added.)
Appellants rely upon the language emphasized to support their contention that the effectiveness of the reapportionment of the House of Representatives is contingent upon reapportionment of the Senate.
The statute under attack comes to this court clothed with a presumption of validity. One who challenges the constitutionality of an Act of the Legislature must clearly demonstrate its invalidity. All doubts are resolved in favor of the constitutionality of legislative action and as between two possible theories of interpretation, the courts are bound to adopt the one which results in upholding the Act if such interpretation is consistent with reason. See Ball v. Branch, 154 Fla. 57, 16 So.2d 524.
The duty imposed upon the Legislature to apportion representation in the Legislative branch of the government is political and administrative. It involves the exercise of judgment and discretion within the orbit prescribed by the organic law. It is a governmental function in the sense that it is commanded by the Constitution pursuant to the responsibility of providing *803 for the actual structure of the government itself. The Florida Constitution mandatorily places upon the Legislature the duty to take the initiative to apportion representation in both Houses of the Legislature in accordance with the constitutional requirements.
It is clear from an examination of the second and fourth sentences of Article VII, Section 3, quoted above, that this is a continuing duty. See Smith v. Holm, 220 Minn. 486, 19 N.W.2d 914; Parker v. State, 133 Ind. 178, 32 N.E. 836, 33 N.E. 119, 18 L.R.A. 567; and 11 Am.Jur. Constitutional Law, Sec. 70, p. 688.
Under our democratic system equality of representation is essential to the preservation of Democracy itself. The thought is well expressed by the Supreme Court of Oklahoma in Jones v. Freeman, 193 Okla. 554, 146 P.2d 564, 569, from which we quote as follows:
"* * * The principle of equality of representation lies at the very heart of representative government. 18 Am.Jur. 192, #17. This principle was enjoined upon the Legislature by the cited constitutional provisions. At the ballot box, in a representative government, each citizen is supposed to be, and should be, the equal of every other citizen, and all are entitled to approximately an equal voice in the enactment of laws through elected Representatives. * * *"
Despite the importance of this legislative responsibility and despite the fact that the provisions of our Constitution are clearly mandatory, we are nevertheless forced to the conclusion that the responsibility rests with the Legislature and not with this court. The Legislature is a coordinate branch of the government and even though the performance of a duty is required by the Constitution, the courts, being another coordinate branch of the government, are not authorized to compel the Legislature to exercise a purely legislative prerogative. We are not here intending to hold that once the legislative discretion is exercised and crystallized into a statute, the courts do not have the power to examine the statute and measure its validity by the prescriptions of the organic law.
We here intend to hold, and do so hold, that the Florida Constitution places upon the Legislature two related duties. One is to apportion the membership of the State Senate and the other is to apportion membership in the House of Representatives. The Legislature has performed one of these duties by passing the statute under attack. We cannot read into the Constitution a provision which is not there. There is nothing in the Constitution which provides that reapportionment of the House is contingent upon reapportionment of the Senate, or vice versa. While a casual examination of the quoted constitutional provision might lead one to the thought that both branches of the Legislature should be reapportioned simultaneously or at least within such proximity of time as to be originally effective at the same general election, a more careful analysis will reveal that no such stipulation is written into the organic law and we are without power to provide one.
On the relationship between the Legislature and the courts with reference to reapportionment statutes, see Donovan v. Suffolk County, 225 Mass. 55, 113 N.E. 740, 2 A.L.R. 1334 (note 1337), and also 37 Illinois Law Review 20.
As was stated in Smith v. Holm, 220 Minn. 486, 19 N.W.2d 914, 916:
"* * * The remedy lies in the political conscience of the legislature, where lies the burden of the constitutional mandate. It is not within the province of this court to prompt the action of that conscience. It is usually sensitive enough to promptings from the electorate."
The exceedingly able briefs of counsel for all parties have failed to reveal any really direct precedents that would be considered conclusive. Possibly the most closely analogous decision is Stenson v. Secretary *804 of State, 308 Mich. 48, 13 N.W.2d 202, 208. In construing a constitutional provision somewhat similar to our own, the Supreme Court of Michigan held:
"We are not in accord with the intervening plaintiffs' further contention that since the Constitution, Art. V, § 4, provides for `rearrangement' of senatorial districts, as well as reapportionment of representative districts once in each ten years, the 1943 reapportionment act as to representative districts should be held invalid as an `abuse of legislative discretion', because the 1943 legislature did not also rearrange senatorial districts."
Like the court in the case last cited, we are not in a position to conclude that the Florida Legislature has abused its legislative discretion by enacting Chapter 31378, supra, without enacting a companion measure for the reapportionment of the Florida Senate. As pointed out above, the courts are without power to order legislative action. A contrary ruling would destroy our system of "checks and balances." We judicially know that pursuant to a gubernatorial call issued in accord with the fourth sentence of Section 3, Article VII, the Legislature of 1955 is still technically in extraordinary session and is scheduled to reconvene on June 4, 1956. We must assume that the Legislature will do its duty as its discretion dictates within the limits of the fundamental law.
What we have heretofore said disposes of the problem before us except as to the contention of appellee Stewart to the effect that by the enactment of Chapter 29615, Laws of Florida 1955, Regular session, which adopted the Florida Statutes of 1955, F.S.A. § 16.19, the Legislature in effect reapportioned the Florida Senate by including Section 10.01, Florida Statutes 1955, F.S.A., in the 1955 Revision. Section 10.01, Florida Statutes, F.S.A., is nothing more than the codification of Chapter 23614, Laws of Florida 1945, reapportioning the State Senate as of November 5, 1946. While we have held that the inclusion of a general Act of the Legislature in the statutory revision will cure a defect in the title of the Act, as it originally passed the Legislature, see State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804, we cannot conclude that the Legislature of 1955 can perform the constitutional duty imposed upon it in 1955 by including in the Revision a reapportionment Act enacted in 1945. The third sentence of Article VII, Section 3, of the Florida Constitution, provides that the preceding regular Federal or State Census which shall have been taken nearest any apportionment shall control in the making of any such reapportionment. An examination of Section 10.01, Florida Statutes 1955, F.S.A., will reveal that it became effective at the general election on the 5th day of November, 1946. It could hardly be logically contended that a reapportionment effective in November, 1946, could have been based upon the Federal Census taken in 1950, which we judicially know to be the last preceding regular Federal Census and the one which would control any reapportionment made by the 1955 Legislature. We dispose of this point by adopting the reasoning of the Supreme Court of Alabama in Re Opinion of the Justices, 1950, 254 Ala. 185, 47 So.2d 714, 717, where the following conclusion was reached.
"We judicially know that the population of the various counties of this state has changed during the years which have intervened since the Constitution of 1901 was adopted, so that the representation as provided in §§ 1 and 2 of Title 32, Code 1940, cannot be said to be on a population basis. The contention is without merit that by bringing forward into the Code of 1940 the provisions of previous Codes as to the Division or apportionment of representation in this state constitutes apportionment of the representation of the legislature within the purview of Sections 198-201 of the Constitution of 1901."
Chapter 23614, Laws of Florida 1945, remains the law of Florida until repealed or superseded. However, in and of itself, it cannot be construed as amounting to a *805 compliance with a constitutional requirement that could not be performed until 1955 at the earliest.
All parties are commended for the enlightening and helpful briefs filed in this cause.
We find no error in the ruling of the Chancellor and his decree is therefore
Affirmed.
DREW, C.J., TERRELL and THOMAS, JJ., and PRUNTY, Associate Justice, concur.
ROBERTS and HOBSON, JJ., agree to conclusion.