STATE EX REL. MILES LA ROSE v. RALPH TAHASH.

115 N. W. (2d) 687.

May 25, 1962—No. 38,402.

*Miles La Rose,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, acting warden of State Prison.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order of the district court denying relator's petition for a writ of habeas corpus based on the ground that he is unlawfully imprisoned in the State Prison under an invalid judgment of conviction. It is his claim that Minn. Const. art. 4, §§ 2, 23, 24,[1] require periodic redistricting by the state legislature as a basis for

---

[1]Section 2 provides: "The number of members who compose the Senate and House of Representatives shall be prescribed by law, but the representation in the Senate shall never exceed one member for every 5,000 inhabitants, and in the House of Representatives one member for every 2,000 inhabitants. The representation in both houses shall be apportioned equally throughout the different sections of the State, in proportion to the population thereof, exclusive of Indians not taxable under the provisions of law."

Section 23 provides: "The Legislature shall provide by law for an enumeration of the inhabitants of this State in the year one thousand eight hundred and sixty-five, and every tenth year thereafter. At their first session after each enumeration so made, and also at their first session after each enumeration made by the authority of the United States, the legislature shall have the power to prescribe the bounds of congressional, senatorial and representative districts, and to apportion anew the senators and representatives among the several districts according to the provisions of section second of this article."

Section 24 provides in part: "The senators shall also be chosen by single districts of convenient contiguous territory, at the same time that

legislative representation therein; that at the time of his trial and sentence this constitutional provision had not been complied with since 1913; and that hence the enactment by the legislature of Minn. St. 168.49 (L. 1939, c. 50, which amended L. 1921, c. 384, § 1, which amended L. 1919, c. 72, § 1), under which he was convicted, was invalid. Section 168.49 provides:

"No person shall drive, operate or use a motor vehicle without the permission of the owner or of his agent in charge and control thereof. Any person so doing shall be guilty of a felony and punished therefor by imprisonment in the state prison for not more than five years, or by imprisonment in the county jail for not exceeding one year, or by a fine of not more than $500.00."

The record before us indicates that at his trial defendant was represented by counsel and was found guilty by a jury of the charge of "using an automobile without permission of the owner." On January 6, 1958, he was sentenced to the State Prison at Stillwater for a term of not to exceed 10 years for such crime and for 3 prior felony convictions to which he then pleaded guilty.

In a memorandum accompanying the order denying the petition for writ of habeas corpus, the trial court stated:

"Relator is imprisoned by virtue of a judgment of conviction and sentence for the crime of using an automobile without the owner's permission and three prior convictions. He claims said judgment is invalid for reason stated in the petition. His contention has no merit.

"L. 1913 Chap. 91 is the law under which representations in the State Legislature is regulated. Said act has been held to be constitutional. State ex rel Meighen vs. Weatherill 125 Minn. 336.

"It continues in force until superseded by a subsequent valid act. Smith vs. Holm 220 Minn. 486. See also 30 M. L. R. Vol. 1 page 37."

At the time of his sentence, the record indicates the following proceedings were had:

---

members of the house of representatives are required to be chosen, and in the same manner; and no representative district shall be divided in the formation of a senate district."

"MR. GOULET [counsel for the state]: This is the case of the State of Minnesota versus Miles B. La Rose, who was convicted in this Court before Your Honor on the charge of using an automobile without permission, and was charged with three prior felony convictions. It is my understanding at this time the defendant wishes to withdraw his plea of not guilty as previously entered to the three prior convictions, and enter a plea of guilty as charged.

\* \* \* \* \*

"THE CLERK: Is that your desire at this time, to withdraw your plea of not guilty and plead guilty to three prior convictions?

"MR. LA ROSE: Yes.

"MR. GOULET: The State moves for sentence, Your Honor."

Defendant having been sworn, was examined by the court as follows:

"\* \* \* In connection with the information as to the prior convictions I note that the first one was when you were 18 years of age, \* \* \* and that also was using an automobile without the owner's permission, that's correct, is it not?

"A    Yes.

"Q    You served time in the Iowa State Reformatory at Anamosa, Iowa, is that true?

"A    Yes.

"Q    And for how long a term?

"A    I got a one-year sentence.

\* \* \* \* \*

"Q \* \* \* the next one was in Ramsey County, which was grand larceny in the second degree, and you were sentenced to be confined in the State Prison at Stillwater. Now did you serve that one?

"A    Yes.

"Q    And was that served to expiration?

"A    Yes.

"Q    And on about the 28th day of October, 1948 you were charged in Wayne County, Michigan with larceny from a building. You were sentenced there to from 3½ to 4 years, is that correct?

"A    Yes.

"Q    Did you serve that to expiration?

"A    Yes.

\*    \*    \*    \*    \*

"THE COURT: Counsel, Mr. Thompson, is there anything you wish to say?

"MR. THOMPSON [counsel for relator]: For the record, Your Honor, I would like to state that \* \* \* he has \* \* \* entered a plea of guilty to three [prior offenses] which makes him subject to the maximum of life imprisonment, and I ask the Court only to consider the fact that he has served full ordinary punishment under all the prior charges, and to grant to him some consideration for that \* \* \*.

"MR. GOULET: \* \* \* I would call to the Court's attention that the first conviction was when he was 18 years old. He is now a man of 34 or 35 years of age, and it was for the same thing. \* \* \* The next one was when he was 19 years old and this one was for stealing three bicycles. At that time I believe the information charged that the bicycles were of a value of in excess of $25 and although that was at the time a felony and does constitute a prior felony conviction, were he to do the same act today in Minnesota, it would be a misdemeanor. For these \* \* \* reasons which we have given careful consideration to, I would recommend that the Court limit the sentence of this defendant to a maximum of ten years.

\*    \*    \*    \*    \*

"[The Court] This Court will take into consideration the fact that the first two prior convictions were at a very young age. Notwithstanding that, it is the opinion of this Court that you have been living on the fruits of crime. In the judgment of this Court you are a professional criminal. \* \* \*

"It is considered and adjudged that you, Miles B. La Rose, for the crime of using an automobile without the permission of the owner \* \* \* and taking into consideration three prior convictions upon which prior convictions you likewise have been convicted by your plea of guilty in this Court, you are hereby sentenced to State Prison, Stillwater, Minnesota, at hard labor, until thence discharged by due

course of law or by competent authority, but not to exceed a term of 10 years."

The court's impressions were as follows:

"It is apparent from this man's answers to the preceding questions that he [relator] has not been engaged in employment or a business for his livelihood. At the time he was picked up by the FBI he had $9000 in cashiers checks in his automobile and 26 $100 bills. His modus operendi was to 'case' cigarette vending operators on their routes in an effort to find an appropriate place to make his 'strike'. It apparently had paid off financially in the light of the amount he had in his possession and the fact that he had been living without visible means of support.

"In my judgment La Rose is a professional criminal * * *. Had it not been that his first two convictions occurred when he was under 21 years of age, I would have imposed a much stiffer sentence * * *.

"Unless this man undergoes a decided change in his attitude I would feel that he ought to serve to expiration."

■ This court is in accord with the conclusions reached by the trial court. In Smith v. Holm, 220 Minn. 486, 19 N. W. (2d) 914, the plaintiff sought a declaratory judgment that the 1913 redistricting act above referred to had become unconstitutional by reason of the unequal representation resulting from population changes in various districts of the state. There it was claimed that such changes vitiated the constitutionality of the act and left the state without a valid law creating legislative districts. In passing upon this issue, this court stated (220 Minn. 488, 19 N. W. [2d] 915):

"L. 1913, c. 91, soon after its passage was challenged as to its conformance with the quoted sections [Minn. Const. art. 4, §§ 2, 23] and was held to be constitutional against the very charges of inequality now made against it. State ex rel. Meighen v. Weatherill, 125 Minn. 336, 147 N. W. 105. In that case this court, in announcing the rule under which it would test the validity of the act here under consideration, quoted with approval the rule stated in State ex rel. Atty. Gen. v. Cunningham, 81 Wis. 440, 484, 51 N. W. 724, 730, 15 L. R. A. 561, as follows:

" '* * * *perfect exactness* in the apportionment according to the number of inhabitants is neither required nor possible. But there should be as close an approximation to *exactness* as possible, and this is the utmost limit for the exercise of legislative discretion. If, * * * there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion, and that evinces an intention on the part of the legislature to utterly ignore and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever.' In short, if the legislature exercises its judgment and discretion in enacting an apportionment law, the result is not vulnerable to attack in the courts.

"Does the subsequent change in relative representation annul its provisions adjudged valid when enacted?

> \* \* \* \* \*

"* * * Under art. 3 of our state constitution, the initiative in legislation lies entirely in the legislature, and by art. 4 the redistricting power is placed wholly in that body. * * *

> \* \* \* \* \*

"* * * The responsibility to heed the constitutional mandate to redistrict is laid upon the legislature, and it is, at most, only when as of the time of enactment there appears a clear and palpable violation of the fundamental law that the courts would have the power to upset the law. * * *

"Absent a violation of the announced rule in the enactment, the mere change in relative population and consequent inequality of representation subsequent to enactment does not render the act void. * * * an apportionment act, constitutionally enacted, remains in force until superseded by a valid act."

The same rule is followed in numerous other jurisdictions. Person v. Doughton, 186 N. C. 723, 120 S. E. 481; Fergus v. Marks, 321 Ill. 510, 152 N. E. 557, 46 A. L. R. 960; Williams v. Secretary of State, 145 Mich. 447, 108 N. W. 749; State ex rel. Warson v. Howell, 92

Wash. 540, 159 P. 777; State ex rel. Winnie v. Stoddard, 25 Nev. 452, 62 P. 237, 51 L. R. A. 229; Walter, *Reapportionment of State Legislative Districts*, 37 Ill. L. Rev. 20, footnote 25; Everglades Drainage League v. Napoleon B. Broward Drainage Dist. (S. D. Fla.) 253 F. 246.

Based upon the principle that an apportionment law remains valid notwithstanding population changes, numerous courts have refused to hold statutes passed by subsequent legislatures invalid solely on that ground. People v. Clardy, 334 Ill. 160, 165 N. E. 638; Hughes v. Felton, 11 Colo. 489, 19 P. 444; Leonard v. Maxwell, 216 N. C. 89, 3 S. E. (2d) 316; Everglades Drainage League v. Napoleon B. Broward Drainage Dist. *supra.* In the Clardy case, the rule is well expressed as follows (334 Ill. 167, 165 N. E. 640):

"There is no indication in any of the provisions of the constitution of an intention to penalize the people of the State, as contended by plaintiff in error, to the extent that they should forfeit their right to elect subsequent legislatures in case any previous one had refused to apportion the State into senatorial districts, or that members of a subsequent General Assembly should not be permitted to hold office as such because of the fact that a preceding General Assembly had refused to apportion the State. In other words, we hold that we are not authorized by the constitution of Illinois to declare that the General Assembly that passed the Deadly Weapon Act of 1925 was not a de jure legislative body and the members thereof de jure members and officers of that General Assembly. The act of 1925 is therefore not unconstitutional on the grounds contended for in this case. The act was also held valid under the decision of this court in the case of People v. Saltis, 328 Ill. 494, 160 N. E. 86."

■ It is suggested that the recent opinion in Baker v. Carr, 369 U. S. 186, 82 S. Ct. 691, 7 L. ed. (2d) 663, may limit the foregoing doctrines. Therein the court held that the United States District Court for the Middle District of Tennessee had jurisdiction in a civil action brought under 42 USCA, §§ 1983 and 1988, to redress the alleged deprivation of Federal constitutional rights brought about by the failure of the General Assembly of Tennessee to reapportion the state

in accordance with Tenn. Const. art. 2, §§ 3, 4, 5, and 6, which it was contended by plaintiffs resulted in the "debasement of their votes."

This opinion did not reach the merits of plaintiffs' contentions. It held merely (a) that the district court possessed jurisdiction of the subject matter; (b) that a justiciable cause of action was stated upon which plaintiffs would be entitled to appropriate relief; and (c) that the plaintiffs had standing to challenge the Tennessee apportionment statutes. It concluded (369 U. S. 198, 82 S. Ct. 699, 7 L. ed. [2d] 674):

"* * * Beyond noting that we have no cause *at this stage* to doubt the District Court will be able to fashion relief if violations of constitutional rights are found, it is improper *now* to consider what remedy would be most appropriate if appellants prevail at the trial." (Italics supplied.)

This viewpoint was concurred in by Mr. Justice Stewart in the following language (369 U. S. 266, 82 S. Ct. 737, 7 L. ed. [2d] 714):

"* * * But the merits of this case are not before us now. The defendants have not yet had an opportunity to be heard in defense of the State's system of apportionment; indeed, they have not yet even filed an answer to the complaint. As in other cases, the proper place for the trial is in the trial court, not here."

From the foregoing, it is obvious that this decision falls far short of holding, as relator contends here, that the enactments of various legislatures, organized under apportionment statutes asserted to be invalid because of population changes, are null and void, and that criminal convictions under such enactments must therefore be set aside.

■ Relator contends that Minn. St. 610.29, under which he received a sentence for an increased term, is violative of the Federal Constitution. Without going into the question whether the constitutionality of a statute under which a defendant has been sentenced may be challenged in habeas corpus proceedings, it will suffice to say that § 610.29, under which relator received an increased penalty for prior felony convictions, has been held constitutional. State ex rel. Veblen v. Swenson, 243 Minn. 578, 65 N. W. (2d) 619; State ex rel. Hansen v. Utecht,

230 Minn. 579, 40 N. W. (2d) 441; State v. Zywicki, 175 Minn. 508, 221 N. W. 900.

The sentence required to be imposed here for violation of § 168.49 is "imprisonment in the state prison for not more than five years, * * *." The record discloses that at his trial and conviction by the jury and upon the imposition of the sentence prescribed, none of relator's rights were violated in any respect. He was represented by counsel and chose to be tried by a jury which convicted him. The increased punishment imposed by the court upon him was based upon the application of § 610.29. There is nothing even to imply that the court exceeded its authority thereunder in imposing the sentence under attack. By virtue of § 610.29, because of relator's three prior felony convictions, the court could have imposed upon him a sentence in the State Prison for life. Accordingly, the court's sentence to a term of not to exceed 10 years was in accord with its authority under § 619.29, and there is nothing in the record to establish that either the proceedings, the judgment of conviction, or the sentence imposed herein were invalid.

The order of the district court is affirmed.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.