STATE ex rel. THOMAS J. MEIGHEN v. GEORGE E. WEATHERILL.[1]

May 1, 1914.

Nos. 18,797—(270).

**Reapportionment of legislative districts — constitution construed.**

    1. Section 23, article 4, of the Constitution which provides that the legislature "shall have the power" to reapportion the legislative districts at its first session after a state or Federal census, construed as imposing a duty upon the legislature to make such reapportionment, and if not made at the

1 Reported in 147 N. W. 105.

first session after such census, that it is competent for the legislature to do so at some subsequent session.

**Territory within district.**

2. Precincts 8 and 9 of the Ninth ward of the city of St. Paul, are by the terms of the act expressly placed in the First representative district of the Thirty-eighth senatorial district, and are therefore necessarily within and a part of that senatorial district.

**Legislative districts — population.**

3. Section 2, article 4, of the Constitution, providing that senatorial and representative districts shall be apportioned equally throughout the state, according to the population thereof, does not require that each district contain the same number of inhabitants.

**Discretion vested in legislature.**

4. The legislature is vested with a wide discretion in forming such districts, with which the courts will not interfere, except when there has been a clear and arbitrary departure from the requirement of equality.

**Inequality of population.**

5. A mere variance in the population of such districts is not alone sufficient to justify declaring the apportionment unconstitutional.

Upon the relation of Thomas J. Meighen, the district court for Fillmore county issued its alternative writ of mandamus, directing George E. Weatherill, as county auditor of that county, to receive and file the affidavit of candidacy of relator for the office of state senator for the Fifth senatorial district, consisting of the county of Fillmore, at the primary election to be held on June 16, 1914, as a nonpartisan candidate for the nomination. The respondent Weatherill demurred to the petition of relator and alleged as the grounds of demurrer that the facts stated in the petition did not justify the issue of either an alternative or peremptory writ of mandamus, or state any facts constituting a cause of action. The demurrer was heard and sustained by Kingsley, J. From the order sustaining the demurrer to the petition of relator, he appealed. Affirmed.

*Sasse & French,* for relator.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Samuel Partridge,* County Attorney, for respondent.

125 M.—22.

BROWN, C. J.

The question presented in this proceeding is the validity of the reapportionment act of 1913. Chapter 91, p. 81, Laws 1913. By the prior apportionment of legislative districts Fillmore county constituted the Fifth district and was entitled to elect one senator and two representatives. Under the act of 1913 Fillmore and Houston counties were placed in one district with the right to elect one senator and three representatives; one for each county, and one for the district composed of the two counties. Upon the theory that the act of 1913 was invalid, because in violation of the Constitution, relator herein tendered his filing to the county auditor of Fillmore county as a candidate for state senator under the prior apportionment law. The auditor refused to accept the filing, and this proceeding in mandamus followed. Issue was joined in the court below, upon which the court held the act of 1913 a valid apportionment, and a general demurrer to the alternative writ was sustained. Relator appealed.

The only question presented is the constitutionality of the statute. It is contended by relator that it violates the Constitution in three particulars, namely: (1) That the legislature had no power or authority to reapportion the legislative districts at the 1913 session, that being the second session of the legislature subsequent to the last census; (2) that certain parts of the state, being two election precincts in the city of St. Paul, were not included in any senatorial district; and (3) that the apportionment is not equal throughout the state in proportion to the population thereof.

1. The first contention is answered by the construction to be given section 23 of article 4, of the state Constitution, which provides as follows:

"The legislature shall provide by law for an enumeration of the inhabitants of this state in the year 1865, and every tenth year thereafter. At their first session after each enumeration so made and also at their first session after each enumeration made by the authority of the United States, the legislature shall have the power to prescribe the bounds of congressional, senatorial and representative districts and to apportion anew the senators and representatives

among the several districts according to the provisions of section second of this article."

A Federal census was taken and completed during the year 1910, and the legislature convened in regular session in January, 1911. No reapportionment act was passed at that session, and it is the claim of relator that its authority to do so ceased on the adjournment of that session. In other words, that the provisions of the Constitution quoted are to be construed as a limitation upon the right of reapportionment and that it can be exercised only at a session of the legislature following a state or Federal census. A plausible and persuasive argument was made by counsel for relator in support of that view of the Constitution, but reflection satisfies us that it ought not to prevail. The purpose of the constitutional requirement, or the authority thereby granted, if construed as a grant of power, was to ensure to the different sections of the state proportionate representation in the legislative department. The framers of the instrument no doubt concluded, and properly so, that the most appropriate time to accomplish that object was immediately following a state or Federal census, by which the number and location of the people so entitled to representation would be clearly and definitely determined. There is probably no doubt that, in the absence of some constitutional limitation upon the subject, the legislature would possess the power to redistrict the state at will, for that department is clothed with the right to exercise any and all powers of government where no restrictions are expressly or by necessary implication imposed by the Constitution. Or, as otherwise expressed, the Constitution is generally construed as a limitation and not a grant of power. State v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111. And where a particular act of the legislature is questioned on constitutional grounds it is not the justification therefor that must be pointed out, but the clause or provision of the Constitution which prohibits its enactment. Black, Const. Law 35. It is quite probable, taking the language thereof as the basis for the remark, that the framers of our Constitution understood at the time that a power was thereby conferred upon the legislature in this respect, which otherwise did not exist. The language is that, at the first session

after a state or Federal census, the legislature "shall have the power to prescribe the bounds of congressional, senatorial and representative districts, and to apportion anew the senators and representatives among the several districts." On its face this is a grant of authority, but within the view that all constitutional provisions are as a rule limitations and not grants of power, it must be construed either as a command that the legislative districts be rearranged at the time therein prescribed, or that the authority or power to reapportion be exercised at that time or not at all. If the former, the provision is mandatory, imposing a duty which, within all the authorities, is a continuing one and may be performed at the time prescribed, namely, at the first session following a census, or at any subsequent session. Rumsey v. People, 19 N. Y. 55; People v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L.R.A. 836; State v. Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L.R.A. 561; In re Senate Resolution, 12 Colo. 187, 21 Pac. 481; Denney v. State, 144 Ind. 503, 42 N. E. 929, 31 L.R.A. 726. In the cases cited the constitutional provisions there construed were to the effect that the legislature *shall* at the session next following a state or Federal census, enact a reapportionment act, and it was held that the Constitution was mandatory, imposing a duty upon the legislature which continued until performed. On the other hand, if the provisions of our Constitution, which differ from those of the other states referred to, are to be construed in harmony with relator's contention, then reapportionment can only be made at the legislative session following a state or Federal census. The difference between the language of our Constitution and that of the Constitution of the other states is found in the fact that by the language of the latter the legislature is commanded to make the reapportionment at the first session after the census, while in our state the language is that the legislature shall have the power to reapportion at that session. We think our Constitution should receive the same construction given by the courts of the other states, though the language differs in the respect stated. The purpose and object in view is the same, namely, to secure such rearrangement of legislative districts as will extend equal representation to all parts of the state. And the theory that the Constitution imposes that as a duty and not as

a mere prohibition against reapportionment at some time other than at the first session after a census, seems most consistent with the manifest purpose to be attained.   The Constitution of this state was prepared with great care, and by able and experienced members of the constitutional convention, and as finally presented the result of the best efforts of those engaged in its preparation.   It seems clear that, had there been any intention to restrict or limit the time when a reapportionment might be made, those framing the Constitution had language at their command which, if employed, would not have left that intention shrouded in doubt or uncertainty.   It would undoubtedly have been so declared in express language.   It cannot be said that such was their intention except by indulging in implications wholly at variance with the reason and purpose of a proper redistribution of legislative positions among the people.   Nor can it be said that any good purpose would be served by restricting a reapportionment law to a particular time, when the whole object thereof is to vest in the people rights that inherently belong to them, namely, participation upon an equal footing in the affairs of the state.   This would be denied if for any reason at a session of the legislature next following a census the members thereof are unable to agree upon a reapportionment measure, and their rights in the premises, if relator's contention be sustained, could thus be postponed, and a participation in legislative affairs prevented.   To obviate this situation the Constitution should be construed as imposing a duty of reapportionment, and that the duty so imposed continues until performed.   We adopt that construction.

2. The second contention, namely, that a part of the state was entirely omitted from the act does not require extended discussion. The territory claimed to have been omitted is the eighth and ninth precincts of the Ninth ward of the city of St. Paul.   An examination of the act discloses that both these precincts are expressly placed in the first representative district of the Thirty-eighth senatorial district of Ramsey county, and are therefore necessarily within that senatorial district.   The failure to name them in the part of the act defining that senatorial district was evidently an oversight, and is not fatal to the law.

3. The last contention, that the apportionment was not made equally throughout the state in proportion to the population thereof, is not sustained. The matter of redistricting the state into congressional or legislative districts is so essentially administrative or legislative, restrained only by the Constitution, that the courts interfere therein only when there appears a clear and palpable violation of the fundamental law. There is committed to the legislature a wide discretion in the premises the bounds of which cannot be well defined. The rule applied by the courts generally is clearly stated by Judge Orton in State v. Cunningham, 81 Wis. 440, 484, 51 N. W. 724, 15 L.R.A. 561, as follows: "Perfect enactness in an apportionment according to the number of inhabitants is neither required nor possible. But there should be as close an approximation to exactness as possible and this is the utmost limit for the exercise of legislative discretion. If there is such a wide and bold departure from the constitutional rule that it cannot be possibly justified by the exercise of any judgment or discretion, and that evinces an intention on the part of the legislature to boldly ignore and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever."

Our Constitution provides that representation in both houses of the legislature shall be apportioned equally in proportion to the population of the state. Section 2, article 4. We find in this apportionment act not such an arbitrary departure from the rule of equal representation as to justify the court, within the rule stated, in declaring the act unconstitutional. It is true that the several senatorial and representative districts do not contain the same or approximately the same population. The unit for the senatorial districts is about 30,000 population. Some of the districts, as defined by the act, contain a greater and some a less population than that unit. But that result was evidently unavoidable. There is a total absence of any suggestion of arbitrary action on the part of the legislature, in total disregard of the rule of equality, and no evidence to justify an inference that political consideration played any part in the enactment of the law. The only objection to the act is that there

is not an entire uniformity in the population of the different districts. This standing alone is insufficient to justify the court in declaring the act unconstitutional. Prouty v. Stover, 11 Kan. 255; 2 Am. & Eng. Enc. (2d ed.) 480; People v. Thompson, 155 Ill. 451, 40 N. E. 307. The act taken as a whole appears to have been the result of a good-faith effort to perform a duty, long delayed, to give to the state as fair an apportionment act as could be enacted, and without ulterior or improper motives. We are unable to hold that either the letter or spirit of the Constitution was by its enactment in any proper view violated.

Order affirmed.