Daniel B. MAGRAW, John O. Erickson, Ruth H. O'Dell, Arthur R. Swan, Plaintiffs,

v.

Joseph L. DONOVAN, Secretary of State of the State of Minnesota; Walter H. Borgen, Auditor of St. Louis County, Minnesota; Robert F. Fitzsimmons, Auditor of Hennepin County, Minnesota; Eugene A. Monick, Auditor of Ramsey County, Minnesota, Frances L. Underleak, Auditor of Olmstead County, Minnesota, individually as auditors of their respective counties and representatives of all County Auditors of the State of Minnesota, Defendants,

and

County of Houston, County of Grant, County of Otter Tail; and Dolores Hauge, Auditor of County of Houston, G. J. Lynne, Auditor of County of Grant, and S. B. Johnson, Auditor of County of Otter Tail, Intervening Defendants.

Civ. No. 2981.

United States District Court
D. Minnesota,
Third Division.

July 10, 1958.

Frank S. Farrell and William C. Meier, St. Paul, Minn., for plaintiffs, Reginald Ames, William A. Bierman, O. H. God-

frey, Jr., William B. Randall, Joseph A. Rheinberger, John G. Robertson, St. Paul, Minn., of counsel.

Stanley D. Kane and Neal D. Peterson, Minneapolis, Minn., for Minn. State League of Women Voters, amicus curiae.

Marshman S. Wattson, Minneapolis, Minn., and Patrick J. Foley, Rochester, Minn., for Minn. Branch, American Civil Liberties Union, amicus curiae.

Miles Lord, Atty. Gen., and Harold J. Soderberg, Asst. Atty. Gen., for defendant Joseph L. Donovan, Secretary of State.

Thomas J. Naylor, County Atty., Duluth, Minn., for defendant Walter H. Borgen, Auditor, St. Louis County.

George M. Scott, County Atty., Minneapolis, Minn., for defendant Robert F. Fitzsimmons, Auditor, Hennepin County.

James F. Lynch, County Atty., and Robert G. Flynn, Asst. County Atty., St. Paul, Minn., for defendant Eugene A. Monick, Auditor, Ramsey County.

L. L. Roerkohl, County Atty., Caledonia, Minn., for defendants Houston County and Dolores Hauge, Auditor.

I. L. Swanson, County Atty., Elbow Lake, Minn., for defendants Grant County and G. J. Lynne, Auditor.

Owen V. Thompson, County Atty., Fergus Falls, Minn., for defendants Otter Tail County and S. B. Johnson, Auditor.

Before SANBORN, Circuit Judge, and BELL and DEVITT, District Judges.

PER CURIAM.

The plaintiffs, citizens and voters of the state of Minnesota and residents of several of the more densely populated areas of that state, principally the urban sections, bring this action asking that the 1913 Minnesota Legislative Redistricting Act (Chapter 91, Minn.Laws 1913; Minn.Stat.1953, § 2.02 et seq.; M.S.A. § 2.02 et seq.) be declared invalid and that the Secretary of State and County Auditors be enjoined from operating the election machinery at future elections under that law.

Plaintiffs contend that, by virtue of the substantial increase in population and major shifts of it within the state since 1913, there is now gross inequality in the population of the legislative districts. It is stated that the Minnesota State Legislature refuses to reapportion the state as is required by the Minnesota Constitution, Article 4, Sections 2 and 23, M.S.A. Plaintiffs argue that this unequal representation deprives them of rights guaranteed by the Fourteenth Amendment to the Constitution of the United States and that the Redistricting (reapportionment) Act of 1913 is now unconstitutional. This action is brought under the Civil Rights Act, 42 U.S.C.A. § 1983 et seq. The plaintiffs are seeking a judicial remedy for a legislative wrong.[1]

1. Their prayer for relief reads as follows:
"Wherefore, Plaintiffs respectfully pray that your Honorable Court take jurisdiction of this matter; that a special three-judge court be called to hear and determine this action as by law provided in 62 Stat.L. 968, 28 U.S.C. Sec. 2281 et seq. and declare the rights of the plaintiffs pursuant to 68 Stat.L. 890, 28 U.S.C. Sec. 2201 in the premises to-wit:
"A. That the present legislative apportionment of the State of Minnesota has deprived and continues to deprive the plaintiffs of liberty and property without due process of law and has denied and continues to deny the plaintiffs equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States.

"B. That the Minnesota St.1953 Secs. 2.03 through 2.70 inclusive [M.S.A.], is void and invalid as being contrary to the Fourteenth Amendment of the Constitution of the United States, and the Constitution of the State of Minnesota because of the failure to reapportion the legislative districts of the State of Minnesota in accordance with present population distribution as herein alleged.
"C. That the right of the plaintiffs to vote as guaranteed by Article I, Section 2 and Article VII, Section 1 of the Constitution of the State of Minnesota has been impaired.
"And plaintiffs further particularly pray that after hearing of this action, the court grant further relief in accordance with 62 Stat.L. 964, 28 U.S.C. Sec. 2202 as follows:

**186**

By order of the District Court, Grant, Houston and Otter Tail Counties and their respective County Auditors were permitted to intervene as additional defendants. These are less populous rural counties. It appears that the strength of their legislative representation has been enhanced by the recent population shifts to urban areas of the state. These intervening defendants moved to dismiss the action on the ground that the Court had no jurisdiction. The Court denied that motion. D.C., 159 F.Supp. 901.

This three-judge court was convened by authority of 28 U.S.C.A. § 2281, and took evidence and heard arguments. Briefs have been filed.

■ It was made to appear at the hearing, and is virtually a matter of common knowledge, that there is substantial, and in some instances gross, population inequality among the 67 Minnesota Legislative Districts. There have been 8 legislative apportionments in the history of Minnesota, in the years 1857, 1860, 1866, 1871, 1881, 1889, 1897 and 1913. The 1913 reapportionment was made upon the basis of the 1910 census. During the period between 1910 and 1950, the population of Minnesota increased from 2,075,708 to 2,982,483, or 43.7 per cent. Population growth throughout the state during that period has been distributed unevenly. Some counties have gained population. Anoka County, for instance, has gained 184.8 per cent. Other counties have lost population. Generally, urban and suburban counties have shown the largest increase.

As an example of the discrimination as between legislative districts in the state, it was made to appear that the smallest Senate district, the Third, consisting of Wabasha County, had a population of 16,878, whereas the largest Senate district, the Thirty-sixth, Hennepin County, had a population of 153,455 —both according to the 1950 census. Each Senate district is represented by one Senator. Similar, but not as marked, discrepancies appear in many of the other Senate districts.

More pronounced inequalities exist in the population of the House districts. The smallest House district, the Fortieth District, Fourth Ward, St. Paul, had a 1950 population of 7,290, whereas the largest House district, Thirty-sixth District South, Hennepin County, had a 1950 population of 107,246. A voter in the Fortieth District, according to these statistics, would be equal to 14.7 voters in the Thirty-sixth District South. Sixty of the House districts are substantially over-represented in the Legislature, and 24 of the House districts are under-represented.

"A. To restrain the defendants from furnishing forms for nominations, from receiving nomination petitions and papers, from certification of nominations or elections, and from any other acts necessary to the holding of elections for members of the Minnesota Legislature in districts as established by Minnesota Stat. 1953 Secs. 2.03 through 2.70 inclusive, until such time as the said Legislature enacts legislation reapportioning the state senatorial and representative districts according to the Constitution of the State of Minnesota.

"B. To direct the defendants to declare the next primary and general elections for members of the Minnesota Legislature on an at-large basis, and to direct them to take whatever further action is necessary to insure that all candidates for election to the 1959 session of the Minnesota Legislature run at-large throughout the entire state on the following basis: the sixty-seven candidates for the State Senate receiving the highest number of votes shall be declared elected to the State Senate; the one hundred and thirty-one candidates for the House of Representatives receiving the highest number of votes shall be declared elected to the House of Representatives; said method of election to continue until such time as the said Legislature enacts legislation reapportioning the State senatorial and representative districts according to the Constitution of the State of Minnesota.

"C. For such other and further relief as may seem just, equitable and proper."

The voluminous statistics set out in the pleadings and shown by the evidence were supplemented by the testimony of Representative Alfred J. Otto of the Fortieth District, and Alf Bergerud of the Thirty-sixth District South, and by the testimony of William Anderson, Professor Emeritus of Political Science at the University of Minnesota, and Dr. John A. Bond, Professor at the North Dakota State Agricultural College, Fargo, and the author of a treatise on legislative reapportionment in Minnesota. Professor Bond testified that only 4 of Minnesota's 87 counties are equitably represented in the State Legislature, assuming a 15% variation from the norm.

From all of the evidence, it is obvious that substantial inequality exists in the present composition of Minnesota legislative districts. The Minnesota Supreme Court has held that the 1913 reapportionment law, valid when enacted (see State ex rel. Meighen v. Weatherill, 1914, 125 Minn. 336, 147 N.W. 105), was not made invalid by subsequent population changes, and that it would continue in effect until superseded by a valid reapportionment act. Smith v. Holm, 220 Minn. 486, 19 N.W.2d 914. It is to be noted that the Smith case was decided in 1945, and no question of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States was presented or considered.

This Court has jurisdiction of this action because of the federal constitutional issue asserted. We think, however, that no attempt should be made to decide the issues presented and argued until after the Legislature of the State of Minnesota has once more had an opportunity to deal with this problem, which is of vital concern to the people of the state.

■■■ The federal courts are disinclined to rule on matters peculiarly and primarily of state concern. A healthy respect for the division of powers between the central government and the states is conducive to harmonious and effective government on all levels. We must have a "scrupulous regard for the rightful independence of the state governments," and should refrain from acting where proper recourse may be had to a branch or tribunal of the state government. See Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500–501, 61 S.Ct. 643, 85 L.Ed. 971; Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 172–173, 62 S.Ct. 986, 86 L.Ed. 1355; Spector Motor Service Co. v. McLaughlin, 323 U.S. 101, 103–105, 65 S.Ct. 152, 89 L.Ed. 101; Albertson v. Millard, 345 U.S. 242, 244–245, 73 S.Ct. 600, 97 L.Ed. 983; Green v. Phillips Petroleum Co., 8 Cir., 119 F.2d 466; Romero v. Weakley, D.C.S.D.Cal., 131 F.Supp. 818, 832. "The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction." Railroad Commission of Texas v. Pullman Co., supra, at page 500 of 312 U.S., at page 645 of 61 S.Ct.

■■■ Here it is the unmistakable duty of the State Legislature to reapportion itself periodically in accordance with recent population changes. Minnesota Constitution, Article 4, Sections 2 and 23; Smith v. Holm, supra, at page 490 of 220 Minn., 19 N.W.2d 914; State ex rel. Meighen v. Weatherill, supra, page 341 of 125 Minn., 147 N.W. 105. Early in January 1959 the 61st Session of the Minnesota Legislature will convene, all of the members of which will be newly elected on November 4th of this year. The facts which have been presented to us will be available to them. It is not to be presumed that the Legislature will refuse to take such action as is necessary to comply with its duty under the State Constitution. We defer decision on all the issues presented (including that of the power of this Court to grant relief), in order to afford the Legislature full opportunity to "heed the constitutional mandate to redistrict." Smith v. Holm, supra, at page 490 of 220 Minn., at page 916 of 19 N.W.2d.

It seems to us that if there is to be a judicial disruption of the present legislative apportionment or of the method or machinery for electing members of the State Legislature, it should not take place unless and until it can be shown that the Legislature meeting in January 1959 has advisedly and deliberately failed and refused to perform its constitutional duty to redistrict the State.

The Court retains jurisdiction of this case. Following adjournment of the 61st Session of the Minnesota Legislature, the parties may, within 60 days thereafter, petition the Court for such action as they, or any of them, may deem appropriate.