STATE of North Dakota ex rel. Gordon S. AAMOTH, Petitioner,

v.

P. O. SATHRE, Leslie R. Burgum, Ben Meier, Ben Wolf, and Arthur Link, Respondents.

No. 7958.

Supreme Court of North Dakota.

Aug. 8, 1961.

Conmy, Conmy & Feste, Fargo, for petitioner.

William R. Pearce, Sp. Asst. Atty. Gen., and Paul M. Sand, Asst. Atty. Gen., for respondents.

STRUTZ, Judge.

The petitioner, a citizen and taxpayer of the State of North Dakota and a resident of the city of Fargo in Cass County, brings this action to invoke the original jurisdiction of this court to enjoin the Chief Justice of the North Dakota Supreme Court from issuing a proclamation under Section 35 of the North Dakota Constitution, as amended.

The petition shows that the people of this State, at the primary election held on June 28, 1960, adopted an amendment to the North Dakota Constitution which, among other things, amended Section 35 so that it now reads:

"Each senatorial district shall be represented in the House of Representatives by at least one representative except that any senatorial district comprised of more than one county shall be represented in the House of Representatives by at least as many representatives as there are counties in such senatorial district. In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts. If any legislative assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the chief justice of the supreme court, attorney general, secretary of state, and the majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the same force and effect as though made by the Legislative Assembly."

The petition of the relator shows that the Thirty-seventh Session of the Legislative Assembly of the State of North Dakota failed to apportion the membership of the House of Representatives of the Legislative Assembly, and that it therefore became

the duty of the above-named respondents, as the persons designated in the constitutional amendment, to proceed to make such apportionment.

The petition further sets forth that the respondents attempted to make such apportionment by adopting, on May 8, 1961, by majority vote, the so-called "Burgum plan," the petition alleging that, on the said 8th day of May 1961, the following action was taken by the apportionment group:

> "Wolf moved to accept the Burgum plan, seconded by Link and the vote was 4 to 1 for adoption."

The petition then alleges that such plan would apportion representation in the House of Representatives of the North Dakota Legislative Assembly in an arbitrary, illegal, and unconstitutional manner and in excess of the jurisdiction of the apportionment group, and not according to population.

The petition prays that the court take original jurisdiction of the matter; that it restrain and enjoin the Honorable P. O. Sathre, Chief Justice of the North Dakota Supreme Court, from issuing a proclamation as provided for in the constitutional amendment above referred to; and that a writ of mandamus issue directing the respondents to make an apportionment of the balance of the House of Representatives according to the population of the several senatorial districts of the State, as required by said Section 35 of the North Dakota Constitution, as amended.

The respondents, by their return, show that the ninety-day period from the adjournment of the 1961 session of the Legislative Assembly had not yet expired at the time of the commencement of this action, and that the respondent P. O. Sathre had not yet issued a proclamation announcing an apportionment; that the members of the apportionment group are empowered by the Constitution to exercise discretionary legislative functions; that in the exercise of such legislative functions they are not subject to the control, direction, or supervision of the courts, and that neither this court nor any inferior court has the jurisdiction or the power to command and enjoin the respondents from exercising such legislative functions, nor do the courts have jurisdiction to command the apportionment group to exercise its legislative duties and functions in any particular manner by writ of mandamus.

■ This court has heretofore held that it is no part of the judicial function to interfere with the constitutional processes of legislation, and that it will not entertain a suit to test the constitutionality of a proposed act of the Legislature on the ground that, if such act is enacted, it will interfere with the constitutional rights of the litigant. Anderson v. Byrne, 62 N.D. 218, at page 229, 242 N.W. 687.

This same rule is followed in many other jurisdictions. Goodland v. Zimmerman, 243 Wis. 459, 10 N.W.2d 180; State ex rel. Flanagan v. South Dakota Rural Credits Board, 45 S.D. 619, 189 N.W. 704; Maryland-National Capital Park and Planning Commission v. Randall [Secretary of State], 209 Md. 18, 120 A.2d 195; Collins v. Horten, Fla.App., 111 So.2d 746; State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S.W. 40; 16 C.J.S. Constitutional Law § 151(1), p. 724; 11 Am.Jur., Constitutional Law, Sec. 200; Fergus v. Marks, 321 Ill. 510, 152 N.E. 557, 46 A.L.R. 960.

That the function of the apportionment group is legislative, there can be no doubt. The constitutional amendment itself authorizes such group to make the apportionment, and then provides: " * * * when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the same force and effect as though made by the Legislative Assembly."

The petitioner contends that the work of the apportionment group was complete when it adopted the so-called "Burgum plan," and that this court is not being asked

to interfere with the constitutional processes of legislation but it is, in effect, being asked to declare unconstitutional the action of the apportionment group, which action is complete and is an accomplished fact.

We do not believe this contention is sound. No proclamation has been issued by the Chief Justice announcing the apportionment, and the ninety-day period within which action by the apportionment group is required has not yet expired. A study of the provisions of Section 35 of the Constitution, as amended, leads us to the inescapable conclusion that the apportionment group, provided for in that amendment, is a constitutionally created legislative body that acts under powers conferred upon it by Section 35 of the North Dakota Constitution as a part of the independent, coordinate legislative branch of the State government, and that it has not yet completed its work but still is acting in the process of discharging the legislative duties imposed on it by such constitutional provision. The constitutional provision itself further provides that its acts, when completed, will have the same force and effect as those of the Legislative Assembly.

█ Here, the group composed of the Chief Justice, the Attorney General, the Secretary of State, and the majority and minority leaders of the House of Representatives are acting as a miniature legislature and are performing a function which the Legislature itself should have performed. The apportionment group's action has the same force and effect before the law as any action of the Legislative Assembly would have had. In answer to the petitioner's argument that the group's action is complete, we point to the fact that no rec-

ord is required by the Constitution to be made. There is no provision for the filing of the results of the apportionment group's deliberations with the Secretary of State or with any other officer. The only means provided for announcing or publishing the plan of apportionment which will finally be adopted, or which may be decided upon by the group, is the proclamation of the Chief Justice. When that proclamation is issued, it will be the last act of the legislative process that devolves upon this group, and such proclamation will terminate the group's action with respect to apportionment. Until such proclamation is issued, the action of the group is not subject to challenge in the courts. State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S.W. 40.

█ Thus the action of the apportionment group is clearly legislative. Since such action is subject to change at any time until issuance of the proclamation by the Chief Justice, and therefore is incomplete at this time, any action to enjoin the issuance of the proclamation would be an interference by the judicial branch of the government with the constitutional functions of the legislative branch.

For reasons stated herein, the petitioner is not entitled to any relief under the allegations of his petition. Accordingly, this court, on the 24th day of May 1961, entered its minute order dismissing the same.

MORRIS, BURKE, TEIGEN and W. C. LYNCH, JJ., concur.

SATHRE, C. J., being disqualified, did not participate, Hon. W. C. LYNCH, one of the judges of the Fourth Judicial District, sitting in his stead.