Ray LEIN, John Hove, John M. Murphy, Walter Durkop, and Russell Duncan, Plaintiffs,

v.

P. O. SATHRE, Leslie R. Burgum, Ben Meier, Ben Wolfe and Arthur Link, and Ben Meier, Secretary of State for the State of North Dakota, Defendants.

Civ. No. 424.

United States District Court
D. North Dakota,
Southwestern Division.

Jan. 29, 1962.

536

E. T. Conmy and E. T. Conmy, Jr., of Conmy, Conmy & Feste, Fargo, N. D., for plaintiffs.

William R. Pearce, of Cox, Pearce, Engebretson, Murray, Atkinson & Gunness, Bismarck, N. D., as Special Asst. Atty. Gen., and Paul M. Sand, Asst. Atty. Gen., for defendants.

Before VOGEL, Circuit Judge, and REGISTER, Chief Judge, and DAVIES, District Judge.

PER CURIAM.

Plaintiffs are citizens of the United States and of the State of North Dakota,

are registered and qualified voters in said state and are entitled to vote for members of the state legislature in their respective senatorial districts. Defendants are all citizens of the United States and of the State of North Dakota. P. O. Sathre is Chief Justice of the Supreme Court; Leslie R. Burgum is Attorney General; Ben Meier is Secretary of State; and Ben Wolfe and Arthur Link are, respectively, majority and minority leaders of the House of Representatives of the State of North Dakota.

The electors of this state on June 28, 1960, at the primary election held on that day, adopted amendments to certain sections of the North Dakota Constitution. Section 35 of said Constitution was amended to read as follows:

"Section 35. Each senatorial district shall be represented in the House of Representatives by at least one representative except that any senatorial district comprised of more than one county shall be represented in the House of Representatives by at least as many representatives as there are counties in such senatorial district. In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts. If any Legislative Assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the chief justice of the supreme court, attorney general, secretary of state, and the majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the

same force and effect as though made by the Legislative Assembly."

Under Section 35, the Legislative Assembly of the State of North Dakota was directed to apportion the balance of the members of the House of Representatives after each federal decennial census. The Thirty-Seventh Session of the Legislative Assembly which met in 1961, and which was the first regular session following the federal census of 1960, failed to make the apportionment provided by Section 35; it thereupon became the duty of the "apportionment group" consisting of the defendants herein named to make the apportionment provided by said Section 35. The members of the apportionment group met and on May 8, 1961, adopted an apportionment plan for the House of Representatives. On May 29 (the 89th day following adjournment of the Legislative Assembly) the Chief Justice issued a proclamation announcing the apportionment plan and filed such proclamation with the Secretary of State. Under this plan the allotment of an additional representative to each district was determined upon the basis of population brackets and the practical application of such plan will allegedly result in a substantial inequality in the effectiveness of the voting strength of individual voters in the various districts.

Shortly after the adoption of the plan on May 8, and a substantial period of time prior to the expiration of the 90th day following adjournment of the legislature, an action was commenced in the North Dakota Supreme Court, entitled State of North Dakota ex rel. Aamoth, Petitioner v. P. O. Sathre (Leslie R. Burgum, Ben Meier, Ben Wolfe, and Arthur Link, Respondents), in which the petitioners asked the Supreme Court for a prerogative writ enjoining the Chief Justice from issuing a proclamation as provided for in Section 35, and in effect requested that Court to review the apportionment plan then adopted and declare it unconstitutional, and to direct the respondents therein by writ of mandamus to make an apportionment of the members of the House of Representatives according to the population of the several senatorial districts of this state, as required by Section 35. The Supreme Court determined that said petition was premature, as the action of the apportionment group was at that time incomplete, and refused to grant the relief asked for. A minute order of the Supreme Court dismissing said petition was issued accordingly on May 24, 1961, and the formal opinion of the Court (reported at 110 N.W.2d 228) was dated August 8, 1961.

The plaintiffs herein contend that this Court has original jurisdiction of this action and that they have the right to bring this suit under the Civil Rights Act, 42 U.S.C.A. §§ 1983 and 1988, which provide as follows:

" § 1983. Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

" § 1988. Proceedings in vindication of civil rights. The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein

the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

Plaintiffs contend further that this Court has jurisdiction under the provisions of 28 U.S.C.A. § 1343(3) and (4), which section provides as follows:

" § 1343. Civil rights and elective franchise.

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*   \*   \*   \*   \*   \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

By their complaint plaintiffs ask this Court to declare that the apportionment made and proclaimed "abridges and decimates plaintiffs' privileges as citizens, deprives them of liberty without due process of law, denies them equal protection of the law and in a substantial measure disenfranchises them, all contrary to and in violation of the constitutions of the United States of America and the State of North Dakota." Plaintiffs further ask this Court to restrain the defendant Ben Meier, as Secretary of State, "from giving notice of state elections, furnishing forms for nominations, receiving filings of candidates, preparing ballots and instructions, certifying of nominations or elections and from doing any other act necessary to the holding of elections for members of the House of Representatives of the North Dakota State Legislature until such time as reapportionment is made in accordance with the Constitution."

The defendants in effect deny that a justiciable controversy is present, that a violation of the Civil Rights Act or of the Constitution of the United States exists, and that this Court has jurisdiction. Defendants contend that the question involved is political in nature and that the alleged right of equality of voting strength is not one guaranteed by the Constitution of the United States or by the Fourteenth Amendment thereof.

The action is now before this Court on the following motions:

a. Plaintiff's Motion for Summary Judgment.

b. Defendant's alternative Motion to Dismiss or for Summary Judgment.

Following oral arguments heard on January 11, 1962, said motions were taken under advisement by this Court.

Plaintiffs assert certain portions of Section 35 are subject to attack as being invalid. They assert that portion which provides for a representative for each county in each senatorial district comprised of two or more counties, regardless of population, distributes political power unequally and is clearly invalid; they assert that portion which imposes legislative duties upon the Chief Justice of the Supreme Court is illegal and void for the reason that it is contrary to Section 96 of the North Dakota Constitution, which reads as follows:

"Section 96. No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided."

From the latter contention plaintiffs deduce and allege "That the re-apportionment herein complained of is illegal

and void because it was participated in by the Chief Justice of the State of North Dakota." Paragraph XIV, Complaint. Plaintiffs further allege "That if Section 35 of Article II of the Constitution of the State of North Dakota can be said to delegate any discretion as to what the law shall be in the defendants, it is to that extent illegal and void." Paragraph XII, Complaint.

However, both in their briefs and oral argument, plaintiffs have made clear that in this action Section 35 is neither being challenged as a whole nor as to any portion thereof, but that the sole attack is as to the "act of re-apportionment" made by the apportionment group under color of Section 35, and that the sole relief sought herein is that the same be declared null and void because the apportionment was not made according to population of the several senatorial districts, and that the secretary of state be restrained from taking any action necessary to the holding of elections for members of the House of Representatives pursuant to such apportionment.

Succinctly stated, plaintiffs contend that the apportionment made is invalid and void for the following reasons:

a. It exceeds the authority delegated to the apportionment group by Section 35, in that the apportionment made was not in accordance with the population, as therein provided;

b. The apportionment made was not in accordance with population, but was in violation of and disregard for the law and was arbitrary and in violation of certain provisions of the Constitution of the State of North Dakota; and

c. The apportionment made is in violation of the Civil Rights Act and the Fourteenth Amendment to the Constitution of the United States.

We have stated in some detail the contentions of the parties because we think by so doing it becomes apparent that there are basic, fundamental questions involved here, of which the specific issue before this Court is but one facet. A determination by this Court of such specific issue would not be finally dispositive of the basic questions involved. Were this Court to entertain jurisdiction and grant the relief as presently limited and sought by plaintiffs, many questions of vital interest and concern to the electors of North Dakota would remain unanswered. Among such questions might be the following: Was the constitutional authority of the apportionment group finally terminated with the issuance of the proclamation? Was the life of such group limited to the 90 day period following adjournment of the 1961 Legislative Assembly? Does such group have present authority to reconvene and adopt and proclaim another apportionment plan? The Legislative Assembly, at its first regular session after the 1960 federal decennial census, failed to make an apportionment. If the present plan be adjudicated null and void as being contrary to the provisions of Section 35, is there any existing constitutional authority under Section 35 or otherwise whereby another apportionment might be made until after the 1970 federal decennial census?

Were this Court to entertain this action and deny the relief as sought by plaintiffs, Section 35, in toto or specific portions thereof would be subject to challenge by plaintiffs or others having similar status, on the basis of the various propositions referred to by plaintiffs. The present apportionment plan could still be challenged upon the basis, as alleged in plaintiff's complaint, that the Chief Justice of the Supreme Court participated as a member of the apportionment group and issued the formal proclamation. The question might also be raised and presented (as posed in plaintiff's reply brief) that, as the apportionment group acted in the exercise of its functions as a part of the legislative branch of the state government, was its action invalid by reason of the failure of such group to keep and publish a journal of their proceedings?

We indicate no opinion as to the merits of such contentions but refer to them only to indicate the broad and profound

basic questions involved, and to emphasize the fact that a determination by us of the sole issue now presented would be ineffective to finally determine the same. These basic questions involve the interpretation and meaning of Section 35 in toto and of specific portions thereof; they involve various sections of the Constitution of the State of North Dakota and their relationship with each other; they involve the validity of the action taken by the apportionment group, the qualification of the Chief Justice to act as a member thereof, the status and authority, if any, of such group to take further action if necessary to effect an apportionment, and perhaps even the authority of a future Legislative Assembly to make an apportionment. All of these questions, involving the specific issue presented to this Court, are peculiarly and primarily state questions.

In Remmey et al. v. Smith et al., D.C., 102 F.Supp. 708, a suit was commenced in the federal district court of the eastern district of Pennsylvania to have the then existing Pennsylvania Apportionment Act of 1921 declared unconstitutional and compel the general assembly of that state to reapportion representative and senatorial districts so as to reflect population changes, as required by the provisions of the state constitution. While the facts in that case are distinguishable from those in the case before this Court, and Remmey was dismissed on the ground that it was prematurely brought, we believe the following observations and expressions of that court are applicable here: (p. 711)

"The determination which the plaintiffs would have us make lies in that extremely sensitive field, the relation of the powers of the National Government to those of the States. Here, of all places, a federal court should tread warily and with great circumspection and should forego any action where relief may be furnished by the State. This court should not intervene where an apparent, but untried, remedy may lie in the Courts of the Commonwealth of Pennsylvania. * * * "

Magraw et al. v. Donovan et al., D.C., 163 F.Supp. 184, was an action brought by citizens and voters of Minnesota to have the 1913 Minnesota Legislative Redistricting Act declared invalid and state officers enjoined from operating election machinery at future elections under that law. Plaintiffs contended that the Minnesota State Legislature had refused to re-apportion the state as required by the Minnesota Constitution, notwithstanding the fact that gross inequality in the population of the legislative districts existed. The federal court there accepted jurisdiction of the case, but refused to decide the issues involved until after the state legislature had once more had an opportunity to deal with the problem. In discussing the matter, that court said: (p. 187)

"The federal courts are disinclined to rule on matters * * * primarily of state concern. A healthy respect for the division of powers between the central government and the states is conducive to harmonious and effective government on all levels. We must have a 'scrupulous regard for the rightful independence of the state governments,' and should refrain from acting where proper recourse may be had to a branch or tribunal of the state government."

While the facts in Magraw rather closely parallel those in Remmey, rather than those in the case at bar, we believe that the reasoning of the court therein, as quoted, and the general principles expressed, are applicable and appropriate here.

Plaintiffs correctly contend that in the Aamoth case, supra, the validity of the action taken by the apportionment group on May 8 was challenged in the Supreme Court on the ground that the same was not in accordance with the population of the several senatorial districts, as provided by Section 35, and that the petition was dismissed by that Court. Plaintiffs argue here that such dismissal, together

with the failure of the Supreme Court to retain jurisdiction of that case until after the issuance of the proclamation, as requested by them, and the content of the minute order of said Court made on May 24, 1961, (which provides, in part, as follows:

"IT IS THEREFORE DETERMINED AND ORDERED That the decision of the Court be as follows:

"(1) That the group of officials named in Section 35 of the North Dakota Constitution is a part of the legislative branch of the state government coordinate with and equal to the judicial branch, and that in the exercise of its constitutional powers it is not subject to supervision, control or interference by the courts.")

constitute cause "why the issues here need not be again presented to the North Dakota courts." As we understand it, the contention and argument of plaintiffs in this connection is that such issues were, in effect, before the Supreme Court in Aamoth. Such interpretation, we believe, is unwarranted and incorrect, and such contention untenable.

The succinct wording of the minute order must necessarily be read in the light of the formal opinion in which the reasoning of the Supreme Court finds expression. The Supreme Court states that the function of the apportionment group is legislative and that "The Chief Justice of the Supreme Court, the Attorney General, the Secretary of State, and the majority and minority leaders of the House of Representatives, acting as an apportionment board under the provisions of Section 35 of the North Dakota Constitution, as amended June 28, 1960, act as a part of the legislative branch of the State government, coordinate with and equal to the judicial branch. In the exercise of its constitutional powers, this apportionment board is not subject to supervision, control, or interference by the courts." Aamoth, supra, syllabus by the Court. The Supreme Court therein likens the functions and constitutional duties of this group to those of the legislature, and states that the members of such group *"are acting* as a miniature legislature and *are performing* a function which the Legislature itself should have performed." The Court continues: "The only means provided for announcing or publishing the plan of apportionment *which will finally be adopted, or which may be decided upon* by the group, is the proclamation of the Chief Justice. *When that proclamation is issued,* it will be the last act of the legislative process that devolves upon this group, *and such proclamation will terminate* the group's action with respect to apportionment. * * * *Since such action is subject to change at any time until issuance of the proclamation* by the Chief Justice, *and therefore is incomplete at this time,* any action to enjoin the issuance of the proclamation would be an interference by the judicial branch of the government with the constitutional functions of the legislative branch." (Emphasis added.) And, the Court says further: "Until such proclamation is issued, the action of the group is not subject to challenge in the courts."

It therefore clearly appears that when the Supreme Court stated that the group "in the exercise of its constitutional powers * * * is not subject to supervision, control or interference by the courts", they referred to the time when such group was still in the process of discharging its legislative duties and could still reconsider or amend such plan as had been previously adopted by it, or adopt another and different apportionment plan, prior to the time of the issuance of the proclamation. The only reasonable inference or deduction that can be drawn from the Court's statement that "Until such proclamation is issued, the action of the group is not subject to challenge in the courts" is that after the issuance of such proclamation, the action of the group is subject to challenge in the courts upon constitutional grounds, as are acts of the legislative assembly after the same have become final by the approval and signature of the governor.

Therefore, the only issue before the Supreme Court in Aamoth, as it appears to us, was whether or not the petition was premature, and thus the decision in that case is limited to the proposition that the petitioners therein were not entitled to any relief under the allegations of the petition for the reason that at the time of filing said petition the action of the apportionment group was incomplete and that, until the proclamation was issued, the action of the group was not subject to challenge in the courts. Such decision and the reasoning of the Court therein required no consideration whatsoever as to the merits of the contentions of the parties or the validity of the proposed apportionment plan. It cannot be said, therefore, that the issues presented here, or any of the basic questions which are related to the question of the validity of the apportionment plan have ever been presented to or considered by the Supreme Court of North Dakota. We believe that court should have the opportunity of passing on all questions herein before further proceedings are had in this Court.

In view of the foregoing it is unnecessary for us to pass upon the question of our jurisdiction to adjudicate the questions herein presented.

This action will not at this time be dismissed, but further proceedings will be stayed subject to the further order of this Court, upon petition and for good cause shown.

It is so ordered.

RONALD N. DAVIES, District Judge (dissenting).

I am unable to agree with the majority of the Court that further proceedings herein should be stayed. In my view the Court has jurisdiction in this matter under 28 U.S.C.A. § 1343(3) and (4), and under the Civil Rights Act, 42 U.S.C.A. §§ 1983 and 1988.

Conscious as I am of the disinclination of the Federal Courts to entertain litigation which is basically the concern of a sovereign state, I believe there exists here a justiciable controversy which this Court should hear and determine upon the merits.

While I subscribe to the theory of judicial comity and courtesy, I would not confuse it with judicial reluctance in a proper cause which I believe this to be.

The Plaintiffs here, claiming among other things abridgment of basic constitutional rights and substantial disenfranchisement, should not be compelled to engage in further litigation in another forum, when this Court, in my judgment, is a proper tribunal for disposition of the questions here presented.

I dissent.