Ray LEIN, John Hove, John M. Murphy, Walter Durkop, and Russell Duncan, Plaintiffs,

v.

P. O. SATHRE, Leslie R. Burgum, Ben Meier, Ben Wolfe and Arthur Link, and Ben Meier, Secretary of State for the State of North Dakota, Defendants.

Civ. No. 424.

United States District Court
D. North Dakota,
Southwestern Division.

May 31, 1962.

E. T. Conmy and E. T. Conmy, Jr., of Conmy, Conmy & Feste, Fargo, N. D., for plaintiffs.

William R. Pearce, of Cox, Pearce, Engebretson, Murray, Atkinson & Gunness, Bismarck, N. D., as Sp. Asst. Atty. Gen., and Paul M. Sand, Asst. Atty. Gen., State of North Dakota, for defendants.

Before VOGEL, Circuit Judge, and REGISTER and DAVIES, District Judges.

PER CURIAM.

This Court initially heard oral arguments and considered briefs of the respective parties in January of this year. The plaintiffs, by their complaint, challenged the plan apportioning members of the House of Representatives of this state, which plan had been formulated and adopted by the "re-apportionment group" consisting of the defendants herein, pursuant to the authority conferred upon it by the provisions of Section 35 of the Constitution of the State of North Dakota. Said complaint alleges that the "re-apportionment is unconstitutional and void as contrary to the provisions of the Constitutions of the United States of America and the State of North Dakota" * * * "in that it abridges and decimates their privileges as citizens, deprives them of liberty without due process of law, denies them equal protection of the law" * * * and * * * "in a substantial measure disenfranchises them and abridges the value of their vote". Plaintiffs herein further alleged "That by reason of the action of the defendants in making" such re-apportionment "the Constitutional and legal rights of plaintiffs have been violated and a serious judiciable controversy has arisen". The prayer for relief asks that this Court take jurisdiction, that a special three-judge court be called to hear and determine the action, as provided by applicable law, and declare the rights of the plaintiffs to be as follows:

"(A) That the re-apportionment made as shown in Exhibit 'A' abridges and decimates plaintiffs' privileges as citizens, deprives them of liberty without due process of law, denies them equal protection of the law and in a substantial measure disenfranchises them, all contrary to and in violation of the Constitutions of the United States of America and the State of North Dakota.

"(B) That as further and necessary relief, the Defendant Ben Meier as Secretary of State be restrained from giving notice of state elections, furnishing forms for nominations, receiving filings of candidates, preparing ballots and instructions, certifying of nominations or elections and from doing any other act necessary to the holding of elections for members of the House of Representatives of the North Dakota State Legislature until such time as re-apportionment is made in accordance with the Constitution.

"(C) For such other and further relief as to the Court may seem just, equitable and proper."

Following the hearing and consideration of briefs as heretofore referred to, this Court (one member dissenting) stayed further proceedings subject to our further order. Lein et al. v. Sathre et al., D.C., 201 F.Supp. 535.

In our first opinion, 201 F.Supp. 535, we stated at page 542:

" * * * We believe that court (Supreme Court of North Dakota) should have the opportunity of passing on *ALL QUESTIONS* herein before further proceedings are had in this Court." (Emphasis supplied.)

This is precisely what the Supreme Court of the United States did in the very recent case of Scholle v. Hare, 82 S.Ct. 910, 8 L.Ed.2d 1, in remanding to the Supreme Court of Michigan a similar question so that court could be "the first to consider the merits of the federal constitutional claim free from any doubt of its justiciability." It is significant that Scholle was decided subsequent to the decision of the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, which determined that such a question as here involved is judicially cognizable. The Supreme Court in Scholle indicated that such question is not only appropriate for consideration by a state court, but that state courts have an obligation to enforce and protect rights created by the Federal Constitution.

Subsequent to our January opinion, plaintiffs sought relief in the Supreme Court of North Dakota. The situation being such that it for the first time did have jurisdiction to hear and determine the controversy on its merits, said Court promptly and without hesitation or "judicial reluctance" took the case and promptly decided it. It determined that the plan for re-apportionment promulgated by the "re-apportionment group" was unconstitutional for violating the mandate of Section 35 of the North Dakota Constitution to apportion according to population of the several districts, and was void. It further determined that the power of that "group" to act on behalf of the Legislature expired at the end of ninety days following the adjournment of the last Legislative Assembly, and that it was the duty of the Legislature to reapportion and that such duty is a continuing one. It further held that there had been no apportionment made under Section 35 of the North Dakota Constitution; that the last apportionment made, and the one under which legislative elections since have been held, is Chapter 7, Session Laws of North Dakota, 1931; and that said Chapter 7 continues to be the law governing the apportionment under which legislative elections are to be held until it is superseded by a valid apportionment made pursuant to Section 35 or pursuant to a further amendment of the Constitution of the State of North Dakota. Lein et al. v. Sathre et al., N.D., 113 N.W.2d 679.

As a part of the relief prayed for in their case before the Supreme Court of North Dakota, as here, plaintiffs asked that Court to restrain the Secretary of State from doing any act necessary to the holding of elections for members of the House of Representatives until such time as a reapportionment is made in accordance with the North Dakota Constitution. Such relief was denied.

Plaintiffs are now before us on a Petition filed on the 17th day of April, 1962, in which they complain and allege that the North Dakota Supreme Court failed and refused to grant to them the relief sought in paragraphs (B) and (C) of

their prayer, as hereinbefore quoted. In said Petition, the plaintiffs allege that " * * * if such requested relief * * had been granted, the Governor of the State would have been compelled to call the legislature into Special Session for the purpose of making a new apportionment". The relief asked for in the Petition, in addition to the granting of an immediate hearing of the Petition, is as follows:

"2. That the Court find and hold that the defendant group has the mandatory duty to make a new reapportionment within ninety days after March 9, 1962, the date when the reapportionment previously made by them was declared void.

"3. That this Court restrain the defendant Secretary of State, as prayed for in (B) of the prayer of the complaint, or restrain him from doing any act necessary to the holding of and (sic) election for members of the House of Representatives of the North Dakota State Legislature until such time as a new reapportionment is made.

"4. That plaintiffs have such other and further relief as to the Court may seem just, equitable and proper."

It therefore appears that two specific propositions are placed before us for determination. The first concerns the alleged "mandatory duty" of the defendant group to make a new apportionment within ninety days after March 9, 1962; the second involves the granting of a restraining order as to the Secretary of State, as above quoted.

■ In our first opinion we suggested, among questions of vital interest and concern to the electors of North Dakota, the following: "Was the constitutional authority of the apportionment group finally terminated with the issuance of the proclamation? Was the life of such group limited to the 90 day period following adjournment of the 1961 Legislative Assembly? Does such group have present authority to reconvene and adopt

and proclaim another apportionment plan?" The Supreme Court of North Dakota, in Lein v. Sathre, supra, clearly and unequivocally decided such questions. It said:

"While the power of the group to act on behalf of the Legislature expired at the end of the 90-day period, the duty imposed upon the Legislature to reapportion is a continuing one."

Hence, it has been finally determined by the Supreme Court of this state that the power of said group has expired. This question involves the interpretation of Section 35 of the North Dakota Constitution, and a determination by the Supreme Court upon such issue is final and binding upon us. We are therefore powerless to grant that portion of the relief prayed for by petitioners which relates to a determination by us that said "group" has a mandatory duty to make a new reapportionment, and the same is denied.

It will be noted that the relief as sought by petitioners in their second proposition advanced here was asked from the Supreme Court of North Dakota in Lein v. Sathre, supra, and specifically denied. With reference thereto, that Court said:

"We have no reason to believe that the Secretary of State will not act in accordance with law and consistent with this opinion without direction or restraint on the part of this Court. The petition for a restraining order is denied."

No reason for such denial, other than is quoted, is expressed. However, the foregoing statement followed and was a part of the same paragraph of said opinion in which the following statements are made:

"The Thirty-seventh Session of the Legislature took no action. The action taken by the group designated by Section 35 to apportion in event the Legislature failed to do so is void. There has been no apportionment under Section 35 of the Constitution. The last apportionment made, and the one under which legislative elections since have been held, is Chapter 7, Session Laws N. D.1931. It continues to be the law governing the apportionment under which legislative elections are held until it is superseded by a valid apportionment made pursuant to Section 35 or pursuant to a further amendment of the Constitution."

These statements we believe to be significant. The Supreme Court had already, in the same opinion, held the apportionment plan promulgated by the "group" to be unconstitutional and void; this was the only legislative act challenged or referred to in the action. Nothing further could be done by that Court by way of injunctive relief with reference to such act. That Court took the precaution of pointing out the existing state law governing apportionment. The Secretary of State has certain mandatory duties with reference to elections. The Supreme Court, after specifically holding that the challenged act was void, and designating what law governs, expressed confidence that the Secretary of State would comply with such existing law without the necessity of any direction or restraining order on the part of the Court. The petitioners are now asking us to grant the identical relief which was specifically denied them by the Supreme Court of North Dakota.

Injunctive relief is an extraordinary remedy. It is relief which is incidental to and respects the subject matter of the action. In this case, as in all cases, the issues are framed by the pleadings. Such pleadings here remain in their original form, without amendments. The cause of action is limited to the plan of reapportionment promulgated by the "group". The only law which plaintiffs in their complaint contend is unconstitutional and which allegedly abridges and decimates their privileges as citizens, deprives them of liberty without due process of law, denies them equal protection of the law, violates their constitutional and legal rights, and which gives rise to a justiciable controversy is the plan of reapportionment referred to. Indeed, that is the only law referred to in the complaint. That act has now been adjudicat-

ed unconstitutional and void. There is nothing before us which indicates that the Secretary of State, in defiance and disregard of the decision of the Supreme Court of North Dakota, is about to take any action in accordance with that act of apportionment. In fact, no such situation is here asserted by petitioners. Plaintiffs candidly admit that they seek an order restraining the Secretary of State from performing his mandatory duties on the basis of the now existing law governing apportionment—Chapter 7, Session Laws N.D.1931—a law which has not been challenged by plaintiffs in the courts.

■ It is our opinion that there is presently before us nothing which would warrant the granting of the injunctive relief sought.

Said Section 35 was approved by the people of this State on June 28, 1960. The Thirty-seventh Legislative Assembly (which met in 1961) was the first regular session of the said Assembly after the 1960 Federal Decennial Census. That Assembly had the power, under the provisions of said Section 35, to re-apportion the members of the House of Representatives. Said Section provided that "If any Legislative Assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the chief justice of the supreme court, attorney general, secretary of state, and the majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the same force and effect as though made by the Legislative Assembly". The Thirty-seventh Legislative Assembly was the first session of the legislature of this State that convened after Section 35 became law. That Assembly, in failing to exercise its prerogative to re-apportion, doubtless relied upon that portion of said Section which provided for reapportionment by the group specified therein, should action by that group become necessary under the provisions

thereof. In view of said provision and of such presumed reliance of the Legislature thereon, this Court does not believe it may reasonably be inferred that said Legislative Assembly "advisedly and deliberately failed and refused to perform its constitutional duty * * *" Magraw v. Donovan, 1958, D.C., 163 F.Supp. 184, 188.

■ The Thirty-eighth Session of the Legislative Assembly of North Dakota will meet on January 8, 1963. It will be the mandatory duty of that legislature to reapportion the members of the House of Representatives in accordance with the applicable provisions of the constitution of this state (absent prior action by a special session of the legislature or an amendment to the constitution eliminating the necessity for such action). The authority of the "re-apportionment group" no longer exists.

The Court in Magraw, supra, stated that: "It is not to be presumed that the Legislature will refuse to take such action as is necessary to comply with its duty under the State Constitution. We defer decision on all the issues presented * * * in order to afford the Legislature full opportunity to 'heed the constitutional mandate to redistrict.' " [1] Neither will we presume that the North Dakota Legislature will "advisedly and deliberately fail and refuse" to comply with its mandatory duty, but will afford that Legislature an opportunity to perform.

The injunctive relief prayed for is denied. We retain jurisdiction of this case. If the Thirty-eighth Legislative Assembly fails to act, said plaintiffs may, at any time after the expiration of 30 days following adjournment of such session and appropriate amendment of their Complaint challenging the validity of the existing apportionment law, present their petition to us, asking for such relief as is then deemed appropriate.

It is so ordered.

RONALD N. DAVIES, District Judge (dissenting).

What the majority of this Court appears to have overlooked is the original

complaint of the petitioners which concludes, as does the petition before us, by praying "for such other and further relief as to the Court may seem just, equitable and proper." Initially the petitioners complained that the 1961 Legislative Assembly failed to make the necessary apportionment provided for in Section 35 of Article II. That body failed to act and reapportionment was undertaken by a "group of officials" whose handiwork has been struck down by the Supreme Court of North Dakota.

Nowhere do I find that petitioners here have ever abandoned their contention that they would be deprived of their Constitutional rights to fair and equal representation of individual electors in accordance with population in the election to the North Dakota House of Representatives scheduled for 1962.

In the original action argued January 11, 1962, the majority of this Court found it unnecessary to pass upon the question of jurisdiction, holding only that:

"This action will not at this time be dismissed, but further proceedings will be stayed subject to the further order of this Court, upon petition and for good cause shown."

Now, apparently, it is conceded this Court does have jurisdiction, since the last paragraph of the majority opinion herein reads:

"The injunctive relief prayed for is denied. *We retain jurisdiction of this case.* If the Thirty-eighth Legislative Assembly fails to act, said plaintiffs may, at any time after the expiration of 30 days following adjournment of such session and appropriate amendment of their Complaint challenging the validity of the existing apportionment law, present their petition to us, asking for such relief *as is then deemed* appropriate." (Emphasis supplied.)

Implicit in this language is the concession that petitioners have a proper grievance which it is hoped the Thirty-eighth Legislative Assembly will redress. If that body does not reapportion, the petitioners may come back to this Court.

Apparently, these petitioners are being afforded no relief in this case because of their failure to attack specifically the last apportionment made by the Legislative Assembly (Chapter 7, Session Laws, 1931). This view is too narrow a concept of petitioners' grievances contained in the pleadings before us.

Forgotten, clearly, is that there must be elected a House of Representatives in the 1962 elections on the basis of an outmoded reapportionment plan which is the very basis for this lawsuit claiming abridgment of basic Constitutional rights and substantial disenfranchisement.

It may be that petitioners have overlooked some of the niceties of pleading, but as has often been said, "The English language has wide play in the joints," and I think we have here a justiciable controversy in which we should look through the form to the substance of the pleadings.

After our decision in January of 1962 and agreeable to our implied mandate, petitioners here sought relief in the Supreme Court of North Dakota. Lein v. Sathre, N.D., 113 N.W.2d 679, March 9, 1962.

In that case and on that date the Supreme of North Dakota held, among other things:

"  *  *  *  There is inherent in a constitutional direction to a legislature to apportion representatives among senatorial districts according to population *a limited discretion to make an apportionment that will approach, as nearly as is reasonably possible, a mathematical equality.*" (Emphasis supplied.)

"  *  *  *  For reasons stated in the opinion, it is held that the apportionment made by the group of officials designated in Section 35 of the Constitution, the proclamation of which was dated May 26, 1961, and filed with the Secretary of State on May 29, 1961, is unconstitutional and void."

"  *  *  *  There having been no valid apportionment of the House of

Representatives under Section 35 of the North Dakota Constitution, the last apportionment made by the Legislature (Chapter 7, Session Laws N.D.1931) continues as the apportionment *under which legislative elections are held until it is superseded by a valid apportionment.*" (Emphasis supplied.)

It must be borne in mind that this Court was the forum of the Plaintiffs' choice in the first instance, the Plaintiffs alleging our jurisdiction based upon 28 U.S.C.A. § 1343(3) and (4), and by virtue of the Civil Rights Act, 42 U.S.C.A. §§ 1983 and 1988.

The Plaintiffs have renewed their complaint to us by way of petition filed April 17, 1962, alleging that they were accorded no affirmative relief from the Supreme Court of North Dakota. I agree with the majority of the Court that the "group of officials" to whom reapportionment was delegated no longer has authority to act, and that the duty of the Legislature to reapportion is mandatory and continues until it is performed; but the tenor of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 663, persuades me beyond doubt that Plaintiffs here have a cause of action of which we had jurisdiction in January and of which we have jurisdiction in May.

The Plaintiffs have twice sought affirmative relief in this Court. In my view they are entitled to it here and now. I decline to speculate whether the 1963 Legislative Assembly will fulfill its mandatory obligation to reapportion in such manner as will approach as nearly as is possible a mathematical equality. I would wait no longer upon the vagaries of the future.

The Secretary of State for North Dakota should be restrained and enjoined from doing any act necessary to the holding of an election of members of the House of Representatives of the North Dakota State Legislature until and unless the Legislature shall properly reapportion seats in the House of Representatives.

I dissent.